## KENNEDY v. GRAMLING.

1. Defendant wrote to plaintiff: "After thinking over the matter in reference to purchasing the property at your figures, I have decided that I would not give you more than $3,800 cash.   Should you accept, please give me an early reply; also send deeds, papers, &c., for examination. If not, I am ready at any time to settle for the year's rent."   Plaintiff acknowledged the receipt of this letter and wrote in reply: "I would like to have realized more than $3,800 for my house, but as you state you will not give more, I will accept your offer of $3,800, this is to be clear of expense of titles, &c.   There is one year's insurance paid on the house, which I expect you to pay.   I will send all the papers to you by Tuesday."   *Held*, that these letters showed in themselves that both parties referred to the same lot of land, and so fulfilled the requirement of the statute of frauds as to the subject matter, and parol evidence was admissible to show the situation and surrounding circumstances of the parties, and thus identify the lot of land then rented by defendant from plaintiff.

2. But as to the price, the statute of frauds was not complied with, as no agreement was reached, the defendant having offered $3,800 and no more, while plaintiff only bound herself to accept $3,800, plus the cost of papers, &c.   This case distinguished from *Neufville* v. *Stuart*, 1 Hill Ch., 159.

3. The maxim *de minimis non curat lex* has no application to money demands.

4. In the absence of an agreement to the contrary proved by direct evidence or by inference from a custom shown to prevail at the place of contract, the vendor must pay for the titles.

5. Where a deed is executed by "A per B," but it appears that A was illiterate and generally had his deeds so signed, and there has been over thirty years' undisturbed possession under this deed, the irregularity in its execution is not a valid objection to the title.

6. Where an assignment "for valuable consideration" to a trustee "for the benefit and behoof of ' a married woman was endorsed on a deed in 1860, in the presence of one witness only, and the deed was otherwise informal in its terms, equity will enforce a proper conveyance; and it cannot be assumed that this trustee had made this purchase with funds held by him as trustee for this same woman, with limitations over, under older deeds of trust, especially where the evidence tends to show a different application of such trust funds. These matters therefore are not a valid objection to the title.

7. A decree in specific performance directing the vendee to comply with his contract of purchase is not objectionable in form, nor a sufficient ground of appeal. The question whether such a judgment could be enforced by attachment would properly arise when an attachment was demanded.

Before HUDSON, J., Charleston, November, 1889.

The report of master Miles in this case was as follows :

This case was referred to me by order of his honor, Judge Pressley, dated 31 January, and filed 13 June, 1889, to take testimony and report upon the issues of law and fact, with leave to report any special matter. I have been attended by the solicitors of the parties, and have taken the testimony which is herewith filed.

The complaint (filed 12 November, 1888) alleges that the plaintiff is the owner in fee and possessed of a house and lot in Spring street, in the city of Charleston, therein fully described. That the defendant, on 7 January, 1888, entered into an agreement in writing with plaintiff to purchase said property for the sum of three thousand eight hundred (3,800) dollars cash. That plaintiff has always been ready to perform the agreement, and, on being paid the purchase money with interest, to convey the property to defendant and to let him into possession and of the rents and profits thereof from the time of said agreement; and on 8 August, 1888, duly tendered to defendant a deed of convey-

ance of the premises, but that the defendant has refused to accept the same and to pay the purchase money and interest. The prayer is for judgment that the defendant perform said agreement and pay to the plaintiff $3,800, with interest from 7 January, 1888, and costs, and for further relief.

The answer of the defendant (filed 26 January, 1889) denies, on information and belief, that the title of the plaintiff to the premises is a good and marketable one in fee simple, and such as the court will require the purchaser to accept. That among the objections to the title are the following: "In the chain of title by which plaintiff claims there purports to be a conveyance of the premises from John Magee to Charles R. Cassidy, bearing date 15 August, 1854, which purports to be signed John Magee, per Arthur Magee, and there is no evidence that Arthur Magee was the authorized agent of John Magee to sign the deed; moreover, the said alleged deed is not recorded, and there is no renunciation of dower thereon.

In the said chain of title there is a conveyance of the said premises by Charles R. Cassidy to Peter J. Sires, and upon said deed is endorsed a very irregular paper purporting to be an assignment, dated 1 January, 1860, by Peter J. Sires of all his right in the within deed to B. S. D. Muckenfuss, as trustee of Martha M. Sires. The said B. S. D. Muckenfuss was the trustee of Mrs. Martha M. Sires in two several modes, and there is some doubt as to which class of said trusts this paper refers; but, upon information and belief, defendant alleges that the trusts upon which the said named trustee was to hold this property were for the said Martha M. Sires for life, and at her death to the children of Peter J. Sires living at the time of her death, and neither the trustee nor Mrs. Sires possessed any power of sale. Mrs. Sires has lately died, leaving several children by her husband, the said Peter J. Sires. On 19 May, 1869, the said B. S. D. Muckenfuss undertook to convey the said premises to C. S. Gadsden, with the consent of the said Martha M. Sires; but that a good and sufficint title, freed and discharged of all trusts, did not pass thereby; that whatever interests the children of Peter J. Sires and Martha Sires have in this property are still subsisting and

outstanding, and they, or some of them, have declared their pur-·pose to assert their right to the same.

The plaintiff claims title through or from said C. S. Gadsden; defendant also claims leave to refer to any other objections to the title, and to any encumbrances thereon, upon the reference that may be made upon the cause. Defendant denies the second paragraph of complaint, that he agreed in writing on 7 January, 1888, to purchase the premises for $3,800; and in answer to third paragraph of complaint, he denies any such agreement.

The agreement for purchase which is sought to be enforced, and which is denied by defendant's answer, is contained in the following letters:

"CHARLESTON, S. C., January 7th, 1888.
"*Miss M. A. Kennedy, Summerville, S. C.:*

"After thinking over the matter in reference to purchasing the property at your figures, I have decided that I would not give more than $3,800 cash. Should you accept, please give me an early reply; also send deeds, papers, &c.. for examination. If not, I am ready at any time to settle for the year's rent.

"Yours, very respectfully,

"GEO. H. GRAMLING."

"SUMMERVILLE, S. C., January 9, 1888.
"*Mr. Geo. H. Gramling, Charleston, S. C.:*

"DEAR SIR: Your favor of 7th inst., came duly to hand and carefully noted. I would like to have realized more than your offer of $3,800 for my house, as I really think it is worth more; but as you state you will not give more, I will accept your offer of three thousand eight hundred dollars, this to be clear of ex·pense of titles, &c. All taxes is paid, both State and city. There is one year's insurance paid on the house, which I expect you to pay. I will send all the papers to you by Tuesday.

"Yours, very respectfully,

"M. A. KENNEDY,
"Per D. C. EBAUGH."

Plaintiff also offers in evidence, letter of Messrs. Smythe and Lee to Geo. H. Gramling, dated 25 June, 1888, and letter of Smythe and Lee to J. E. Burke, Esq., dated 19 July, 1888.

The counsel for defendant contends that the "writing signed

by the party to be charged," required by the provisions of the statute of frauds must be complete in itself, and cannot be supplemented by parol testimony. That the letter of defendant to plaintiff, above stated, is the only "writing signed by the party to be charged," and that any parol testimony to show that said letter refers to the house and lot in Spring street described in the complaint, would be inadmissible as parol testimony to explain or modify a contract in writing. "The writing must contain all the material terms of the agreement," and cannot be supplemented by parol. *Hyde* v. *Cooper*, 13 Rich. Eq., 257 ; *Boozer* v. *Teague*, 27 S. C., 363 ; and other cases cited, as held in *Neufville* v. *Stuart*, 2 Hill Ch., 166.

"A contract to sell and buy land may just as well be made by letters as by any other agreement in writing." The manner in which the question of the sufficiency of such letters to constitute a contract which will be enforced, is thus stated in the Circuit decree of Chancellor Johnston in the above case (p. 161), and which was affirmed by the Court of Appeals. "Can a contract be made out by putting together the defendant's letter and the answer to it ? Do those letters set forth the *subject* and *terms* of a contract, so that if put into the hands of a man of business, he could, by a sound legal interpretation of them, without further instruction reduce the contract to form ? Do they show a treaty with referenc to which mutual assent can be clearly demonstrated ; or a proposal met by that sort of acceptance which makes it no longer the act of one, but of both parties ? So closed as to leave no essential terms to be afterwards settled ? Does the answer, properly understood. amount to an unqualified, single acceptance of the terms proposed without a variation of them, or the introduction of any new or different term, or terms of a different effect ?"

I propose to apply the tests thus stated to this case, both as to subject matter "and the terms" of the contract. As to the "subject matter," the rule is thus stated in Pomeroy on Contracts : "The subject matter of the agreement must all be included in the memorandum, and must be described with sufficient exactness to render its identity certain upon the introduction of extrinsic evidence, simply disclosing the situation of the parties at and imme-

diately before the time of making the contract. Parol evidence is admissible to show the surrounding circumstances and position of the parties, and thus to explain the meaning and application of the descriptive language, and thereby to identify the subject matter." Sec. 90. While the description need not be so minute and exhaustive that the individual thing which constitutes the subject matter will be fully known from a mere reading or recital of the language; yet it must be so definite as to show what the purchaser supposed he was contracting for, and what the vendor intended to sell, and as to enable the court to ascertain what it is by the aid of proper evidence. From the nature of the case it is almost impossible that a description should be so perfect as to dispense with all resort to evidence. * * * The description must be sufficient to render the identity clear upon the introduction of such evidence." Sect. 152. "The rule is the same as that which regulates the admission of parol evidence to identify persons and things in wills or deeds." *Ibid.,* note 1.

And in "Fry on Specific Performance" thus : "Every valid contract must contain a description of the subject matter, but it is not necessary that it should be so described as to admit of no doubt what it is; for the identity of the actual thing and the thing described may be shown by extrinsic evidence. This flows from the very necessity of the case; for all actual things being outside of and beyond the agreement, the connection between the words expressing the agreement and things outside, it must be established by something other than the agreement itself, that is, by extrinsic evidence ; the same rule is admitted, and from the like necessity with regard both to persons and things mentioned in wills ; and in the case of agreements within both the fourth and seventeenth sections of the statute of frauds, parol testimony, as to identity is admissible." Sect. 209. To the same effect is the rule as stated in "Browne on the Statute of Frauds," sect. 385.

1 have selected the above statements of the rule as particularly clear and applicable to this case.

The principles thus stated are in accordance with the decision in the case of *Hatcher* v. *Hatcher* (McMull. Eq., 319, the opinion of the court being delivered by Chancellor Harper), where a

memorandum was held to be certain and unambiguous, though it referred to an extrinsic fact which must be ascertained before the agreement could be carried into effect, and it was held that a resort to extrinsic evidence for such purpose does not come within the rule which forbids parol evidence to be introduced for the purpose of adding to, explaining, or contradicting a written instrument.    See also *Peden* v. *Owens*, Rice Ch., 55.

I do not consider the rule as above stated to be in conflict with the cases of *Church of Advent* v. *Farrow*, 7 Rich. Eq., 378; *Hyde* v. *Cooper*, 13 Rich. Eq., 250 ; *Mims* v. *Chandler*, 21 S. C., 480; *Humbert* v. *Brisbane*, 25 *Id.*, 506 ; *Boozer* v. *Teague*, 27 *Id.*, 348 ; cited by counsel, in some, if not all, of which extrinsic evidence was considered.

I therefore hold that in this case extrinsic evidence by parol is admissible to show the surrounding circumstances and the position and relation of the parties at the time the contract was made, and thus to explain the meaning and application of the descriptive language, and thereby identify the subject matter.    The extrinsic evidence by parol so admitted is "that in January, A. D. 1888, Mr. Geo. H. Gramling resided in the premises, the subject matter of this action, under lease at a yearly rental of $300, payable on 1st January in each year, in advance, from Miss Kennedy.    That no rent has been paid since the receipt of the letter of G. H. Gramling."

I am of opinion that the letter of the defendant to the plaintiff of 8th January, 1888, in reference to purchasing the property at your figures, the offer of $3,800 cash ; the request, if accepted, of an early reply, and to send the deeds, papers, &c., for examination, coupled with the sentence, "If not, I am ready at any time to settle *for the year's rent*," shows that the property which he offered to purchase was the same property which he then occupied. the *year's* rent for which, which was then due in advance, viz., the house and lot in Spring street the subject of this action, and sufficiently identifies the subject matter of the agreement.

The counsel for the defendant further objects that the letter of plaintiff to defendant was not an unequivocal and unconditional acceptance of defendant's offer without variance, and is therefore not operative.    Pom. Cont., sec. 84 ; Fry on Spec. Perf., sec.

167.   The phrases in plaintiff's letter, which he contends are a variance from defendant's offer of $3,800 cash, are: "I will accept your offer of $3,800, *this to be clear of expense of titles*, &c. * * * There is one year's insurance paid on the house, *which I expect you to pay*."

Here again I think the case can be tested by the principles laid down in the case of *Neufville* v. *Stuart, supra*.  I am of opinion in this case, as was held in that, that "the proposition of the defendant to buy is distinctly, and in terms, accepted by the plaintiff upon the terms stated by the defendant." That in speaking of, the price, plaintiff says: "This is to be clear of expense of titles, &c. * * * There is one year's insurance paid on the house, which I expect you to pay."  These words were obviously used as her "construction of the contract which she had accepted, and which she supposed the defendant to have intended by his offer. But they are not made a condition on which the acceptance is to depend.  It is what in common fairness and in the usual course of such contracts, she supposed the defendant to have intended; still, however, leaving it perfectly optional to the defendant to admit or deny her construction, without affecting the legal effect of the contract which she had accepted in such terms and so unconditionally as to prevent the defendant from refusing to comply with it."   (P. 167.)

I am therefore of opinion that the plaintiff is entitled to a specific performance of the contract made by the defendant, if the court shall be of opinion that the title to the property is such as defendant is bound to accept.

*As to the title.*

An "abstract of title" of the property from the grant has been put in evidence.   Counsel for defendant admits that there is no objection to the title prior to the deed from John Magee to C. R. Cassidy, 1854.   The original deed is produced in evidence.   It is under seal and is signed "John Magee, per Arthur Magee." It has two subscribing witnesses, one of whom makes affidavit that "he saw the within named Arthur Magee for John Magee, sign, seal, and, as his act and deed, deliver the within written deed."   There is no renunciation of dower on the deed.   It is

admitted that John Magee, Arthur Magee, and both subscribing witnesses, J. M. Hume and R. O'Brien, are all dead.

The counsel for defendant, while admitting that the grantee's name signed to a deed by a third person, in his presence and by his direction, is as valid and binding as if written by the grantor himself (*Gardner* v. *Gardner*, 5 Cush., 483; 52 Amer. Dec., 740), objects that there is no such evidence as to the signature of this deed. The testimony of the Hon. C. H. Simonton (taken subject to exceptions as to its admissibility) is that he personally "knew John Magee and Arthur Magee, his son. That John Magee, though a man of large property and business, could not write, and that his son Arthur was in the habit of signing all his deeds for him as soon as he came of age. The practice was for John Magee and Arthur Magee both to be present, and John would direct Arthur to sign for him. In 1854, August 15, John Magee was a widower." In view of this testimony and of the long possession since, I do not think this is a valid objection to the title.

The endorsement upon the deed of conveyance from C. R. Cassidy to Peter J. Sires, dated 25 August, 1859, is as follows:
"MESNE CONVEYANCE OFFICE, ⎱
    "Charleston County.        ⎰

"For valuable consideration, I hereby assign all my right, title, and interest in the property described in the within deed to B. S. D. Muckenfuss, trustee of Martha M. Sires, for the benefit and behoof of my wife, the said Martha M. Sires. 1 January, 1860.
                                "P. J. SIRES, [L.S.]

"Witness: HENRY TRESCOT,
            "J. W. GRAY.

"Personally appeared James W. Gray, who made oath that he saw P. J. Sires sign, seal, and execute the above assignment, this 1 January, 1860.                         J. W. GRAY.

"Sworn to before me this 6th February, 1866.
                    "HENRY TRESCOT, *N. P. and ex off. Magt.*"

The original deed and endorsement are in evidence and are herewith filed. By deed of ante-nuptial settlement, dated 4 October, 1831, between Peter J. Sires and Martha M. Ireland, one thousand dollars and some furniture were conveyed to B. S. D.

Muckenfuss upon certain trusts for the intended wife and the children of the marriage, with a power to the said husband' and wife to apply any portion of the trust fund to the purchase of real estate, and thereupon to revoke the uses therein limited, and to declare new uses. By deed of Peter J. Sires and wife to B. S. D. Muckenfuss, dated 11 July, 1834, reciting the marriage settlement, and the desirability of investing part of the trust fund of $1,000 in a lot, the uses declared in said marriage settlement are revoked, so far as they conflict with the deed of lot from Robert Wigfall to B. S. D. Muckenfuss of even date therewith. The deed of Robert Wigfall to B. S. D. Muckenfuss, dated 11 July, 1834, conveys a lot in Warren street in trust for the sole use of Mrs. Sires for life, and at her death to the children of Peter J. Sires, living at the death of Martha M. Sires, in fee freed of all trusts.

From the proceedings had in this court in 1841, upon the petition of B. S. D. Muckenfuss, which have been produced before me, it appears that the lot in Warren street was purchased for $400 of the $1,000 original trust fund; that the property had been divided into two lots, and buildings erected on them, thereby rendering them worth about four thousand five hundred dollars. That the remainder of the original $1,000 of trust funds had been expended, and the trustee had advanced the further sum of $1,798.50 in making said improvement. Upon a report of master Gray, Chancellor Dunkin confirmed a sale agreed to be made of the smaller of the two lots for $1,500, and ordered the net proceeds to be paid to the trustee, the balance of his account to be repaid to him out of the income of the trust property. The Chancellor declined to authorize a sale of the other lot held in trust.

The counsel for the defendant contends that the assignment by Peter J. Sires on the conveyance of Cassidy, being to Muckenfuss. trustee of Martha M. Sires, and said Muckenfuss being then the trustee for the said Martha M. Sires under the deeds hereinbefore set forth, he held upon the trusts of those deeds; that the sale and conveyance by said trustee to C. S. Gadsden, under which plaintiff claims title, was without power and did not pass the interest of the children of Mrs. Sires, who were *cestuis que*

*trust* under said deeds. That if said assignment is construed to be a complete deed, there being no words of inheritance used either as to the trustee or the said Martha M. Sires, Mrs. Sires would take under it only an estate for life, and there would be a reverter to the grantor, Peter J. Sires; that if it shall be construed as an agreement which equity will enforce, the question will be, for whose benefit will it be enforced? If it is held that the trust is only for the life of Mrs. Sires, then the trust being only partially declared, there will be a beneficial interest in the heirs of Peter J. Sires, the grantor; that the assignment being for valuable consideration, "and not for natural affection or other good consideration," such consideration must have been paid by the grantor, Muckenfuss, trustee, and if paid by him from trust fund, the agreement will be carried into effect for the benefit of those beneficially interested in said trust funds, viz., the children of Mrs. Sires, who are not parties and are not bound by these proceedings, and who are not estopped by any previous deeds of the trustee; that if it is doubtful only whether the said children, who are *in esse*, and whose title did not accrue until the death of their mother, less than a year before the institution of these proceedings, have an interest in the property, and the purchaser having notice of such trusts, then the title is not such as the court will compel a purchaser to take, and that the complaint praying specific performance should be dismissed with costs.

It is further in evidence that on 14th February, 1866, the said B. S. D. Muckenfuss executed and delivered to Francis Sires his bond for $2,000, secured by a mortgage of this lot in Spring street; the bond is signed "B. S. D. Muckenfuss, trustee for M. Sires, by consent of the parties;" the mortgage is signed "B. S. D. Muckenfuss, trustee [L. S.], by consent of the parties, P. J. Sires [L. S.], Martha M. Sires [L. S.]"

By deed dated 19 March, 1869, the said B. S. D. Muckenfuss, trustee for Martha M. Sires, in consideration of $3,500, conveyed this lot in Spring street to C. S. Gadsden in fee. The deed is signed "B. S. D. Muckenfuss, trustee for Mrs. M. Sires, with my consent, Martha M. Sires [SEAL]." By deed dated 1 October, 1872, executed by "Martha M. Sires, executrix," it is recited that the said Peter J. Sires, having on 1 January, 1860,

executed the assignment to B. S. D. Muckenfuss, and afterwards
died without having executed any more formal conveyance of the
premises; that the said premises having been since conveyed to C.
S. Gadsden, and a question having arisen as to sufficiency of
such assignment to pass more than an equitable title, that a suit
had been threatened against the estate of the said Peter J. Sires
to compel his executrix to execute a proper conveyance of the
legal title; to avoid the expense of such suit, the said Martha M.
Sires, as executrix under the will of the said Peter J. Sires, dated
17 February, 1859, and in pursuance of the power to her given
in said will "to sell, dispose of, and convey all or any part of his
estate in such manner and upon such terms and conditions, and
to such person and persons as she may deem best," in confirma-
tion of the act of her testator and to convert and change the equit-
able estate created by the assignment into a legal estate, conveys
the said premises to the said C. S. Gadsden in fee.

It appears from endorsement thereon, that the said C. S. Gads-
den assumed payment of the said bond on 19 May, 1869, and
that he paid the same in full on 20 May, 1872, and that the said
Francis Sires entered satisfaction on the mortgage, which was
duly recorded. It is further in evidence that the said C. S. Gads-
den went into possession of said premises, and lived therein until
he sold the same and delivered possession to Mary A. Kennedy,
the plaintiff, by deed dated 18 November, 1872, and that the
plaintiff has held the same continually from that time.

The case has been carefully and thoroughly argued before me
by counsel of both plaintiff and defendant, and authorities cited
in support of their several positions.    I will give my conclusions
on the several questions without attempting to recapitulate the
argument or to give all the authorities cited by counsel.

A critical examination of the assignment on the conveyance
from C. R. Cassidy to Peter J. Sires, executed by Peter J. Sires
1 January, 1860, makes it extemely doubtful whether it was exe-
cuted in the presence of two witnesses, it being very doubtful
whether Henry Trescot signed as a witness or only as register of
mesne conveyance, a doubt which is increased by the fact that J.
W. Gray, the witness, makes affidavit only that he saw P. J. Sires
execute without stating that he, with Henry Trescot, witnessed

the execution.  This affidavit was not made until 6 February, 1866, at which time it was recorded.  The assignment is, I think, therefore "an informal paper purporting to be an assignment of the maker's interest in a tract of land, witnessed by only one witness, but based upon a valuable consideration," as was the assignment in. the case of *Pope* v. *Montgomery* (24 S. C., 594), and which the court held "is sufficient in equity to transfer such interest, and a proper conveyance could be enforced."

But even if it was executed in presence of two witnesses, I think it is wanting in some essential requisites of a complete deed, and operates only as an equitable transfer, and a proper conveyance would be enforced.  The assignment is expressed to be "for valuable consideration," but apart from that being under seal and made in favor of the wife of the maker, it will be executed in this court.  See *Caldwell* v. *Williams*, Bail. Eq , 176.  For whose benefit will it be executed ?  The assignor was, of course, familiar with the marriage settlement of 1831 and the deed of 1834, executed by him and his wife, under both of which B. S. D. Muckenfuss was trustee ; but his assignment is not to the said Muckenfuss as trustee under either of said deeds, nor to the uses and upon the trusts declared and limited in either of said deeds ; but upon trusts essentially different from those declared in said deeds, the assignment is "for the benefit and behoof of my wife, the said Martha M. Sires."

In exercising its jurisdiction over executory trusts, the Court of Chancery is not bound by the technical rules of law, but takes a wider range in favor of the intent of the party ; and in ascertaining the nature and extent of the trust estate of Mrs. Sires under this assignment, we are not bound by the strict technical rules which would govern in the construction of a conveyance creating a legal estate, but must look to the intent of the parties as evinced by the terms of the assignment.  Therefore, although there are no words of inheritance used either as to the assignee or the beneficiary, if it is clear that the assignor intended to create in his wife an absolute estate in fee simple, the court will carry out that intent.  See *Bratton* v. *Massey*, 15 S. C., 285. In 1860 it was necessary that there should be a trustee interposed to protect a married woman in the complete enjoyment of her

separate estate, which no doubt was the reason why the assignor assigned to a trustee for the benefit and behoof of his wife.    If the same terms used in the assignment were used in a conveyance since the Constitution of 1868, the use would be executed and the wife would take the legal estate.

The arguments used by the defendant's counsel, that if the "valuable consideration" expressed in the assignment was paid by Muckenfuss from funds derived from the estates of which he was trustee under the previous deeds, the agreement should be carried into effect for those who have a beneficial interest under said deeds, viz., the children of Mrs. Sires who are not parties to these proceedings, and that therefore the title which can be made by the plaintiff is defective, is based, it seems to me, on the ground that such payment is to be presumed from the fact that the assignment was to him as such trustee, which I have held not to be the case for the reasons above given.

I do not think the position of the counsel is sustained by the case of *Salinas* v. *Pearsall* (24 S. C., 179), which he cites.    In that case the Circuit Judge, whose decree was affirmed, held that "the bond and mortgage, the foundation of that case, were *unquestionably* subject to the same trusts as the property originally conveyed."    In the case of *Barrett* v. *Cochran* (11 S. C., 29), also cited by defendant's counsel, it was said : "The fundamental allegation upon which this appeal is based is, that funds used to make the cash payment on the land mortgaged were trust funds. *It was* incumbent upon the appellant to establish this allegation by proof, and this he has wholly failed to do, while, on the other hand, the testimony adduced by the respondent goes far to show the contrary."    In this case the defendant has not only offered no evidence that the consideration for the assignment was paid from the funds of the trust estate of which Muckenfuss was trustee ; but, on the contrary, the evidence introduced by him as to the history and disposition of the trust funds so held by him "goes far to show the contrary."

The action of the "parties in interest," in making the bond and mortgage to Francis Sires, assumed and paid by C. S. Gadsden, the conveyance to C. S. Gadsden by Muckenfuss and Martha M. Sires, and the deed of confirmation of Martha Sires, exe-

cutrix of Peter J. Sires, to Gadsden—are all evidence of the construction given to the assignment, and the *bona fide* action thereunder, and are confirmatory of the conclusion I have reached, that C. S. Gadsden, under whom the plaintiff claims title, took a good and complete title in fee, free from all trusts. The possession in the parties is, in my judgment, sufficient to cure any defects in the paper title and to make the title good. See *Lyles* v. *Kirkpatrick*, 9 S. C., 270 ; *State* v. *Pacific Guano Co.*, 22 S. C., 53.

Although it is admitted that a purchaser cannot be compelled to take a doubtful title, yet it is also true that the court acts not on *mathematical* but on *moral* certainty, and a person will not be permitted to object to a title on account of a bare possibility. It is not enough to invalidate a contract of sale, that some deed in the chain of title may be set aside by some future proceeding. Moral probability sufficient to make a good marketable title, is all that is required. It is not sufficient for the defendant to show that the title tendered to him may possibly be defeated. He must show that there is reason to apprehend that it will be defeated. See *Laurens* v. *Lucas*, 6 Rich. Eq., 222 ; *Thompson* v. *Dulles*, 5 Rich. Eq., 375. The plaintiff having tendered such a title as is above described, the defendant is bound to comply with his contract, and the plaintiff is entitled to the relief prayed.

The decree of the Circuit Judge was as follow :

This cause came on to be heard on the report of the master, and on exceptions thereto filed by the defendant. After hearing full and elaborate arguments from counsel representing both parties, and after careful consideration of the questions involved, it is adjudged and decreed, that the exceptions to the master's report herein be overruled, and that the said report be in all respects confirmed and adopted as the judgment of this court. It is further adjudged and decreed, that the defendant do, within thirty days from the date of this decree, comply with his purchase and accept the deed tendered to him in compliance with the contract of sale and purchase, paying therefor the price stipulated, with interest. That the costs of these proceedings be paid by the defendant.

Defendant appealed.

*Mr. J. E. Burke*, for appellant.

*Messrs. Smythe & Lee* and *Brawley & Barnwell*, contra.

October 6, 1890.   The opinion of the court was delivered by

MR. JUSTICE McIVER.   This was an action to enforce the specific performance of a contract for the sale of real estate.   The defendant set up two defences—first, that there was no contract valid under the statute of frauds; second, that the title of the plaintiff was not a good and marketable title.   The issues in the action were referred to master Miles, who made a full and elaborate report, clearly setting forth the facts and discussing the legal issues (which should be incorporated in the report of the case), finding that there was a valid contract, and that the title was good and marketable.   To this report defendant excepted, and the case was heard by his honor, Judge Hudson, who, in a short order, overruled the exceptions, confirmed the report, and adjudged that the defendant do, within thirty days, comply with his contract.   From this judgment defendant appeals upon the several grounds set out in the record, which need not be set out here, as they will sufficiently appear from the discussion of the questions raised thereby.

First, was there such a contract for the sale and purchase of the real estate in question as would be valid under the statute of frauds?   The claim on the part of the plaintiff is, that the contract is to be found in a letter from the defendant to the plaintiff and the reply thereto, of which the following are copies:

"CHARLESTON, S. C., Jan. 7, 1888.

*"Miss M. A. Kennedy, Summerville, S. C.:*

"After thinking over the matter in reference to purchasing the property at your figures, I have decided that I would not give more than $3,800 cash.   Should you accept, please give me an early reply; also send deeds, papers, etc., for examination.   If not, I am ready at any time to settle for the year's rent.

"Yours, very respectfully,

"GEO. H. GRAMLING."

"SUMMERVILLE, S. C., Jan'y 9, 1888.
"*Mr. Geo. H. Gramling, Charleston, S. C.:*

"DEAR SIR: Your favor of 7th inst. came duly to hand and carefully noted. I would like to have realized more than your offer of $3,800 for my house, as I really think it is worth more, but as you state you will not give more, I will accept your offer of three thousand eight hundred dollars, this is to be clear of expense of titles, etc. All taxes is paid, both State and city. There is one year's insurance paid on the house, which I expect you to pay. I will send all the papers to you by Tuesday.

"Yours, very respectfully,
"M. A. KENNEDY,
"PER D. C. EBAUGH."

Now, while it is not and cannot be denied that a valid contract for the sale of real estate may be made out by putting together a letter of the defendant to the plaintiff and the plaintiff's reply thereto, or *vice versa*, provided all the essential terms of the contract can be gathered from the terms of such letters, the contention in this case is, that all the essential terms of the contract cannot be gathered from these letters. 1st. Because the property is not specified. 2nd. Because the price to be paid is not agreed upon definitely. It is true that no particular piece of property is in terms specified in either of the letters, and if there is nothing in the letters designating the particlar property for which the offer is made and accepted, that would be fatal to the validity of the contract. *Church of Advent* v. *Farrow*, 7 Rich. Eq., 378; *Hyde* v. *Cooper*, 13 Rich. Eq., 250; *Humbert* v. *Brisbane*, 25 S. C., 506. But while parol evidence is inadmissible to supply an omission in the writing of any reference to the particular property, yet such evidence is competent to show the situation and surrounding circumstances of the parties, and thereby identify the particular property referred to in writing. Thus where there is a proposition to sell and an agreement to buy the house in which plaintiff resides, there is no doubt that parol evidence would be admissible to show in what particular house he did reside, as there could not be a shadow of doubt that both of the parties—the one in making the offer and the other in accept-

ing it—had reference to the same property; and that is the great point.

Hence it may be stated as a rule, that whenever the writing or writings relied upon show, in themselves, that both parties referred to the same property, then the requirements of the statute are fulfilled. and parol evidence may be resorted to for the purpose of designating what particular piece of property both parties had reference to; but where it does not appear from the writings themselves what property was referred to by the parties, then parol evidence is not competent to show that fact. In other words, the writings relied upon must, in and of themselves, furnish the evidence that the minds of the parties met as to the particular property which the one proposed to sell and the other agreed to buy; and when such evidence is not found in the writings, it cannot be supplied by parol; but when it is found there, then parol evidence of extrinsic circumstances may be resorted to for the purpose of specifically designating the property to which both parties are shown to have referred by the terms of the writings. This doctrine is fully established by the authorities cited in the master's report, which need not be repeated here.

Apply this rule to the present case. While it is true that no specific property is described in the letters which passed between the parties, yet we do not think there can be any doubt that the terms of the letters show that both parties referred to the same property—the property which the defendant had rented from the plaintiff. When the defendant wrote to the plaintiff proposing to give a certain price for a piece of property, and concluding by saying that if his offer to buy was not accepted, he was ready to settle for the year's rent, could there have been a doubt in the mind of the plaintiff that the defendant proposed to buy the property which he then occupied under a lease from the plaintiff? It seems to us that the terms used in defendant's letter to plaintiff admit of no other construction than that he proposed to buy at a stated price the property which he had rented from the plaintiff; but if his offer should not be accepted, he was ready to settle for the year's rent. Rent of what? Why, necessarily of the property which he had proposed to buy. The plaintiff could not have failed to understand from the terms of the defendant's letter

that he wished to buy the property which he was then renting from her, and offered a specific sum of money therefor; but if his offer should not be accepted, he was ready at any time to settle for the year's rent of the property. When, therefore, the plaintiff replied to that letter, accepting the offer (if, indeed, she did accept), there can be no doubt that the minds of the parties met as to the particular property referred to, and hence we think it clear that defendant's first objection to the validity of the contract cannot be sustained.

The second objection raises a question of more difficulty. It cannot be doubted that the price to be paid is one of the essential terms of a valid contract for the sale of real estate, and the practical inquiry here is whether the letters relied upon contain in themselves evidence that the minds of the parties ever met as to the price of the property in question. The defendant's letter undoubtedly does contain an offer of a specific sum of money—$3,800 cash—and the defendant distinctly declares, "I would not give more." The plaintiff replied, saying, "I will accept your offer of three thousand eight hundred dollars, this is to be clear of expense of titles, etc." Can this be regarded as an unqualified acceptance of defendant's offer, or is it not rather to be regarded as a conditional acceptance? Is it not the same thing as if plaintiff had said, "I will accept your offer of $3,800, provided you will pay the expense of titles, etc."? It seems so to us. If so, then it cannot be said that the letters contain in themselves the evidence that the minds of the parties ever met as to the very material matter of the price to be paid, for defendant's letter not only contained an offer of a specific sum of money, but was accompanied by a declaration that he would not give more, while plaintiff's letter does not furnish the evidence of an unqualified acceptance of defendant's offer, but, on the contrary, shows that she accepted upon condition that defendant will pay more. In other words, defendant's letter contains an offer of $3,800 and nothing more, while plaintiff's reply shows that she was willing to accept the defendant's offer, provided he would pay more, viz., the "expense of titles, etc." We do not see, therefore, how it can be said that the letters show that the minds of the parties ever met as to the material matter of price. It is true that the difference

between the amount offered and the amount agreed to be accepted is small, but that cannot affect the question. The fact that there was a difference is quite sufficient to show that the minds of the parties never met. The maxim, *de minimis non curat lex*, has no application to money demands. *Nix* v. *Bradley*, 6 Rich. Eq., 43.

It is stated in the argument of one of the counsel for plaintiff, that "the well established rule in Charleston is that the purchaser pays for papers," but we find no evidence in the "Case" of any such rule or custom, and in the absence of any such evidence, we must consider the case under the rule of law. That rule, as we understand it, is that in the absence of any agreement to the contrary, shown either by direct evidence or inferred from the custom shown to prevail in any particular place, the vendor must pay for the expense incurred in making titles. When a person makes a contract to sell a piece of real property, it is necessarily implied that he must make a conveyance thereof, and consequently he must bear the expense of making such conveyance. Hence it has become a very general if not universal custom, when property is to be sold under the order or process of the court, to provide in the order and advertisement that the purchaser is to pay for papers.

It only remains to consider, on this branch of the case, an authority much relied on to sustain a contrary view to that which we have adopted, and that is the case of *Neufville* v. *Stuart*, 1 Hill Ch., 159. In that case, as in this, the effort was to establish the contract by letters which had passed between the parties. The defendant's letter, dated 1st March, 1831, contained a specific offer of $6,000 cash and $2,000 in January, 1832, for the plantation on which Mr. Neufville resided, containing 869 acres, to which plaintiff, through her attorney, replied, saying, "I have to acknowledge your letter of the 1st of March, which came to hand by this day's mail, offering 8,000 dollars for the tract of land, being the settled plantation on which Mrs. Neufville resided, containing 869 acres, viz., $6,000 cash and $2,000 in January, 1832. I accept the offer and will deliver possession as soon as you please. The deed will be signed by Mrs. Neufville as soon as a conveyance can be forwarded to her. I will be ready

to receive the 6,000 dollars when possession is taken, and your bond and mortgage for the 2,000 dollars (with interest, I presume, from the date) may be delivered when Mrs. Neufville's deed is delivered to you. * * * I have written to the overseer to prepare for giving you possession."

The question in the case was, whether the letter of the plaintiff contained an unqualified acceptance of the offer contained in defendant's letter, or whether the words in parenthesis—"with interest, I presume, from the date"—contained in plaintiff's letter imported a conditional acceptance only. It was very properly held that there was an unqualified acceptance of the offer made by defendant, and that the words in parenthesis in a subsequent part of the letter, in reference to the mode of drawing the bond to be given for the credit portion of the price which had been agreed upon, were not used for the purpose of importing any additional term into the contract, but simply as indicating the construction which plaintiff thought ought to be placed upon one of the terms of the contract as made by a previous part of the letter.

It is very obvious that there is a marked difference between that case and this. There the plaintiff, after reciting the terms of defendant's offer, says explicitly: "I accept the offer and will deliver possession as soon as you please." This undoubtedly was an unqualified acceptance of the offer as made by the defendant, and was manifestly intended so to be ; and the fact that plaintiff in a subsequent part of the letter used the expression found in parenthesis, in reference to the interest, was clearly intended not to import any additional term into the contract which had already been closed, but was simply intended to indicate the construction which plaintiff thought ought to be placed upon a contract already made. Here, however, there was no unqualified acceptance of defendant's offer of $3,800, but the acceptance was upon condition that the defendant should pay more than that sum, to wit, the expense of titles, &c. It is very obvious, from the discussion of the question in *Neufville* v. *Stuart*, that if the plaintiff there had, as here, accompanied the acceptance of the offer of defendant with a condition that the $2,000 was to bear interest from date, the conclusion would have been different. If, for example, the plaintiff in that case, in stating the terms of defend-

ant's offer, had added to the words, "$2,000 in January, 1832," the words, "with interest, I presume, from the date," or had added to the words, "I accept the offer" the words, "the credit portion to bear interest from the date," there can be no doubt. that the court would have held the alleged contract invalid under the statute of frauds; for in such a case the defendant would be found making an offer to buy on certain terms, while the defendant would be found accepting the offer with an additional term incorporated into it. It is clear, therefore, that the case of *Neufville* v. *Stuart* is so entirely different from this as to furnish no authority in the present case.

It seems to us, therefore, that there is no valid contract under the statute of frauds established in this case, and that upon this ground the judgment below must be reversed.

This would obviate the necessity of considering the question as to the validity of plaintiff's title, but as that question has been made and fully argued, we will proceed to determine it. In view of the very satisfactory manner in which the question of title has been discussed by the master in his report, we do not deem it necessary to go over the same ground, but are content to adopt his conclusion, concurred in, as it is, by the Circuit Judge.

The only remaining question [1]—as to the form of the judgment—is not, under the view which we have taken, a practical question. but we may say that it appears to be in the usual form and not objectionable. The question, in reference to this matter, raised by appellant, would more properly arise when it is sought to enforce such a judgment by attachment.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and that the complaint be dismissed, upon the ground that the contract of which specific performance is

---

[1] This question is raised by the fourth exception, as follows:

IV. Because his honor erred in ordering defendant to comply with the terms of the contract as found by the court, without providing in the alternative for judgment and execution against the property in case of his failure so to do, inasmuch as the decree, as it now stands, would require process for its enforcement against the person, or render defendant liable in case of failure to comply to attachment as for contempt of court, and so have the effect of imprisonment to enforce a debt or contract in a case free from fraud.

sought to be enforced is not a valid contract under the statute of frauds.