**DAY & ZIMMERMANN, Inc. v. REID.**

No. 13669.

Circuit Court of Appeals, Eighth Circuit.

May 25, 1948.

Ben P. Poor of Burlington, Iowa (H. F. Kuhlemeier and Carl M. Fischer, both of Burlington, Iowa, on the brief), for appellant.

John Hale of Burlington, Iowa (Joseph G. Page of Janesville, Wis., and Don K. Walter, of Burlington, Iowa, on the brief), for appellee.

Before SANBORN, JOHNSEN, and COLLET, Circuit Judges.

COLLET, Circuit Judge.

This is an appeal from a judgment for overtime wages, liquidated damages and the allowance of an attorney fee in an action brought under the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. The parties will be referred to as they were designated in the trial court.

The defendant was engaged in the operation of a large munitions plant in Iowa as an independent contractor on a cost-plus-a-fixed-fee basis under contract with the War Department under supervision of the Ordnance Department. Plaintiff was employed by defendant from August, 1941, to June, 1944. He was classified on defendant's records as an Assistant Storekeeper from August to December, 1941, and as Storekeeper from December, 1941, to June, 1944. As such an employee he was treated as exempt from the application of the Fair Labor Standards Act on the theory that his duties were executive and administrative. The defendant's original answer set up the defense that plaintiff was an executive or administrative employee and for that reason exempt from the application of the Act. Prior to the trial, however, the parties entered into a stipulation by which it was agreed that plaintiff was employed by defendant for a stated weekly salary intended by defendant to be exempt from overtime compensation and was so classified upon defendant's records and so paid without regard to the number of hours worked, that plaintiff agreed to work as many hours as were required to discharge the responsibility of his position, but that during the period from August 21, 1941, until October 17, 1943, he was not actually an executive or administrative employee. The amount of overtime which plaintiff was entitled to recover for that period, if the defenses later interposed and hereafter discussed were not sustained, was agreed to be $1227.-01. Subsequent to the passage of the so-called Portal-to-Portal Act, 29 U.S.C.A. § 251 et seq., the answer was amended setting up Section 9 of that Act as a complete defense to plaintiff's claim for both overtime, liquidated damages, and attorney fees and, in the alternative, pleading Section 11 of that Act as a defense to the claim for liquidated damages and attorney fees should the defense predicated upon Section 9 not be sustained.

Section 9 of the Act entitled "Relief from certain existing claims under the Fair Labor Standards Act of 1938, as amended, the Walsh-Healey Act, and the Bacon-Davis Act" which will be referred to as the Portal-to-Portal Act, is as follows (29 U.S.C.A. § 258):

"In any action or proceeding commenced prior to or on or after May 14, 1947 based on any act or omission prior to May 14, 1947, no employer shall be subject to any liability or punishment for or on account of the failure of the employer to pay minimum wages or overtime compensation under the Fair Labor Standards Act of 1938, as amended, the Walsh-Healey Act, or the Bacon-Davis Act, if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any administrative regulation, order, ruling, approval, or interpretation, of any agency of the United States, or any administrative practice or enforcement policy of any such agency with respect to the class of employers to which he be-

354

longed. Such a defense, if established, shall be a bar to the action or proceeding, notwithstanding that after such act or omission, such administrative regulation, order, ruling, approval, interpretation, practice, or enforcement policy is modified or rescinded or is determined by judicial authority to be invalid or of no legal effect." May 14, 1947, c. 52, § 9, 61 Stat. 88.

Section 11 of the Portal-to-Portal Act is as follows (29 U.S.C.A. § 260):

"In any action commenced prior to or on or after May 14, 1947 to recover unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended, if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216(b) of this title." May 14, 1947, c. 52, § 11, 61 Stat. 89.

The defense pleaded and which defendant sought to sustain was, stated in general terms, that defendant had acted in good faith in conformity with and in reliance on an administrative regulation, order, ruling, approval or interpretation of an agency of the United States in classifying and paying plaintiff upon the theory that he was exempt and hence that defendant was relieved by Section 9, supra of any liability for overtime under the Fair Labor Standards Act. The alternative defense predicated upon Section 11, supra, also stated in very general terms, was that defendant's action in classifying plaintiff and paying him on the hypothesis that he was exempt from the application of the Fair Labor Standards Act was in good faith and based upon reasonable grounds for believ-

ing that its action was not a violation of the Fair Labor Standards Act. The cause was submitted to the court without a jury. The trial court made findings of fact, stated its conclusions of law, and filed an opinion explanatory of both (73 F.Supp. 892). That court reached the conclusion that the evidence did not sustain either defense. Consistent with such findings, it entered judgment for $1227.01 for the overtime stipulated to be due plaintiff under those circumstances, for a like amount as liquidated damages, and allowed plaintiff attorney fees in the amount of $300.00. It is now contended on this appeal that the court's findings were unsupported by the evidence.[1]

As heretofore stated, defendant was engaged in the operation of a large ordnance plant in the manufacture of munitions on a cost-plus-a-fixed-fee basis. Several thousand were employed in the plant. Under defendant's contract with the War Department, which was acting on behalf of the United States, the defendant was to carry on the operation as an independent contractor with all expenses of operation paid by the United States. The Government was also to indemnify defendant against any loss, including expenses of litigation, of any kind arising out of or connected with the performance of the work unless such loss or expense should be shown by the Government to have been caused directly by bad faith or willful misconduct on the part of some officer or officers of the defendant acting within the scope of his or their authority. The contract provided for an opportunity at all times for the Government representatives to make any and all inspections necessary to insure the proper production of the munitions and to protect the Government against unwarranted expenditures. The Ordnance Department of the War Department was assigned the duty of inspection. Early in the beginning of the operation of the plant defendant's comptroller

[1] Defendant states in its brief that "the Portal-to-Portal Act of 1947 has restored the conscience of the Court, and it should now function in Wage and Hour matters as a 'legal conscience'". Without express or implied criticism of counsel's refreshingly pungent manner of expression, we deem it desirable to abstain from an expression of our views concerning the admirable conscience of the learned trial judge. Nor do we deem it of value for us to comment upon the possibility of restoration of judicial conscience by an Act of Congress.

had a conference with the Major representing the Ordnance Department at the plant at which the general classifications of the employees were discussed. Defendant's comptroller testified that the primary object of the Ordnance Department at that conference was to see that the proper balance was established and maintained between the supervisory employees and the production employees. There appears to have been no mention whatever of plaintiff's prospective duties at that conference other than a possible reference to the office he held. Defendant's comptroller made up the classification of jobs and classified the positions of Assistant Storekeeper and Storekeeper as executive or administrative, and hence exempt from the application of the Fair Labor Standards Act. A copy of this classification was given to the Ordnance Department representatives at the plant. It contained the name of plaintiff as Assistant Storekeeper and showed the exempt status of the position he held.

The Ordnance Department's Assistant Field Auditor testified to the effect that there were approximately 75 men employed under him, checking to see whether defendant was operating in conformity with the contract and the law. The Assistant Field Auditor knew plaintiff but did not personally know what duties he was actually performing. The primary object of these checkers was to keep down unnecessary expense and to see that men were not paid for work they did not do. He testified that if a man was found to be improperly classified they would report it to defendant, but it does not appear that any such reports were actually made, certainly none were made concerning plaintiff. When defendant desired to change a man's classification a routine procedure was followed which included the submission of a formal request therefor to the Ordnance Department.

The payrolls were submitted to the Ordnance Department at regular intervals and the defendant reimbursed for their payment. These payrolls always showed plaintiff's status as exempt. Never at any time was any objection made by the Government representative concerning the plaintiff's classification. There is no evidence what-ever that any officer of the Ordnance Department knew what duties plaintiff was performing in his position of Assistant Storekeeper and later as Storekeeper. The evidence does not show that the "checkers" knew what he was doing except for short periods when he was occasionally actually under observation by them. Plaintiff's time cards went through the Ordnance Department's auditing department at the plant and at the District Office with his designation as an exempt employee on it. The reason he was not in fact exempt was, as stipulated, that he was employed for more than 20% of his time at duties of non-exempt employees, and that during the period when it was stipulated he was not exempt, his recommendations as to hiring and transferring were not given particular weight. It was essential to his exemption from the application of the Fair Labor Standards Act that he not be employed more than 20% of his time at duties performed by non-exempt employees and that his recommendations as to hiring and transferring of employees be given particular weight.

Defendant's manager of stores testified. The inference to be drawn from his testimony is that plaintiff did nothing but supervisory work and that his recommendations as to hiring and transferring were given weight. The stipulation of facts refutes that testimony insofar as it may have been intended to apply to the period covered by the stipulation—the period now involved.

Defendant's comptroller testified that he did not know that plaintiff was performing services in a capacity which prevented him from being exempt from August 21, 1941, to October 17, 1943. Defendant does not contend that the officials of the Ordnance Department knew what plaintiff was doing.

In the light of these facts the defendant's position, tersely stated, is that its lack of knowledge, predicated upon its comptroller's lack of actual personal knowledge of plaintiff's activities, established its good faith in assuming that plaintiff was performing the duties which the comptroller assumed an Assistant Storekeeper and Storekeeper would perform. Defendant bases its claim for reliance on an "adminis-

360

trative regulation, order, ruling, approval, or interpretation of an agency of the United States" of its treatment of plaintiff as an exempt employee on the fact that if the checkers knew what plaintiff was doing at all times during the period in question, which defendant asserts they should be presumed to know, such knowledge should be imputed to the Ordnance Department, which defendant further assumes to be an appropriate agency within the meaning of the Portal-to-Portal Act, all with the result that the failure of the Ordnance Department to object to plaintiff's classification should absolve them from liability. We do not agree with such an interpretation of the Act.

If it be assumed, as defendant contends, that the knowledge it assumes the Ordnance checkers had of plaintiff's activities should be imputed to the Ordnance Department (assuming without determining that the Ordnance Department was an agency of the Government within the meaning of the Portal-to-Portal Act) then there appears to be no logical escape from indulging a corresponding assumption that knowledge of plaintiff's activities should be imputed to defendant, with the result that it knew what plaintiff was doing and may not be heard to say that it in good faith did not.

■ But the more important and decisive question is whether a failure on the part of the Ordnance Department to object to a classification of an employee, concededly made by defendant and merely reported to the Ordnance Department without any specific reference to the duties being performed by the individual in question, and without any discussion or consideration by the officials of the Ordnance Department and defendant's officials of the propriety of plaintiff's classification in the light of the known facts, or any specific investigation to determine the true facts, constituted an "administrative regulation, order, ruling, approval, or interpretation of an agency of the United States, or any administrative practice or enforcement policy of any such agency with respect to the class of employers to which [defendant] belonged." The answer must be that it did not. It was the intent of the Portal-to-Portal Act that employers who had an understanding in good faith with an appropriate Government agency that a practice or act was proper under the Fair Labor Standards Act should not be held liable for a violation of the latter Act. It certainly was not the intent of the Portal-to-Portal Act that a mere approval for payment of a payroll submitted to Government auditors for that purpose should constitute an understanding in good faith between an agency of the Government and the party submitting the payroll that one individual erroneous classification among thousands on that payroll was a proper classification when it is not even shown that any official of the Government knew what the individual erroneously classified was actually doing, and the employer even professes ignorance of the employee's activity.

■■ The contention that the defendant showed "to the satisfaction of the Court" that its act in paying plaintiff as an exempt employee was in good faith and that it had reasonable grounds to believe that its act was not a violation of the Fair Labor Standards Act is equally untenable. Defendant was the party primarily responsible for knowing what its employees were doing. As heretofore noted, it asserts the ignorance of its officials concerning the activities of plaintiff as evidence of its good faith in not properly classifying him. And it depends upon the failure of the uninformed officials of the Ordnance Department to correct defendant's mistake to establish reasonable ground for defendant's belief that it classified plaintiff properly. The Portal-to-Portal Act expressly vests in the court, in this instance primarily the trial court, the "sound discretion [to] award liquidated damages" or not to do so. This language of the Portal-to-Portal Act lends emphasis to the general rule that only when a finding of a trial court is clearly erroneous may it be disturbed. The finding of the trial court that this defense was not established was not clearly erroneous.

■ Defendant further contends that the trial court erred in awarding attorney fees without evidence concerning the value of the attorney's services. It does not contend that the amount was excessive. The cases of Glynn v. Cascade State Bank, 227 Iowa 932, 933, 289 N.W. 722, and In re Estate

of Dalton, 183 Iowa 1013, 168 N.W. 332, are cited as authority for the contention that evidence of the value of such services was a necessary prerequisite to an allowance. Those authorities are not controlling. This court in cases arising under the Fair Labor Standards Act has allowed attorney fees on appeal without taking testimony on the value of such services. Dumas v. King, 8 Cir., 157 F.2d 463; Republic Pictures Corp. v. Kappler, 8 Cir., 151 F.2d 543, 162 A.L.R. 228. There is no reason advanced why the trial court with proper and adequate information before it concerning the extent of the services rendered could not place a value on such services without opinion evidence of an expert witness on the subject. The contention is without merit.

Plaintiff asks for the allowance of attorney fees on this appeal. As stated heretofore, the trial court allowed him $300.00 as compensation for his attorneys in the trial court. An attorney fee of $250.00 on this appeal is hereby allowed.

The judgment is affirmed.