**UNITED STATES CARTRIDGE CO.
v. POWELL et al.**

No. 13663.

United States Court of Appeals,
Eighth Circuit.

Oct. 26, 1950.

Rehearing Denied Nov. 20, 1950.

Opinion Modified Jan. 23, 1951.

See 186 F.2d 611.

R. H. McRoberts, Rhodes E. Cave and Marion S. Francis (of Bryan, Cave, McPheeters & McRoberts), all of St. Louis, Mo., for appellant.

Thomas Bond, St. Louis, Mo., for appellees.

William S. Tyson, Solicitor, Bessie Margolin, Asst. Solicitor, and William A. Lowe and E. Gerald Lamboley, Attys., Dept. of Labor, all of Washington, D. C., and Reid Williams, Kansas City, Mo., amici curiae.

Before GARDNER, Chief Judge, and SANBORN, WOODROUGH, THOMAS, JOHNSEN, RIDDICK and COLLET, Circuit Judges.

COLLET, Circuit Judge.

This cause is now before us on remand from the Supreme Court. It is an action brought by a group of 59 plaintiffs, who were employed during World War II at the St. Louis ordnance plant, to recover overtime compensation, liquidated damages, attorneys' fees, and costs, under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C.A. § 201 et seq. The trial court found all of the issues in favor of plaintiffs and entered a judgment aggregating $246,251.44 (twice the amount of overtime claimed), plus $24,625 as attorneys' fees and costs. The case was filed on May 4, 1945. It was tried in July, 1946, the trial ending on July 18. The trial court entered its judgment and findings of fact and conclusions of law on May 19, 1947. The Portal-to-Portal Act of 1947, 29 U.S.C. A. § 251 et seq., became effective on May 14, 1947. After the filing of the judgment in the trial court, the defendant filed a motion for a new trial, including in that

motion a formal request to reopen the case to permit it to plead the defenses made available to it by the Portal-to-Portal Act and to offer evidence in support thereof. This motion was denied and the appeal followed.

The case was first submitted at the May Term, 1948, to a court consisting of the customary number of three judges. At the time it was taken under submission by that court the case of Kennedy v. Silas Mason Company, 334 U.S. 249, 68 S.Ct. 1031, 92 L.Ed. 1347, was pending in the Supreme Court. We held the case under submission awaiting the determination of the Kennedy-Silas Mason case because of the similarity of important issues in both cases. When the Kennedy-Silas Mason case was remanded by the Supreme Court without determination of those issues, but calling attention to a number of important considerations that should enter into the determination of the paramount question as to whether the Fair Labor Standards Act applied in these cases, because of the pendency of other cases before other judges of this court involving the same dominant question, we set aside the original submission and set the cause for re-argument before this court en banc. We concluded that the Fair Labor Standards Act did not apply. United States Cartridge Co. v. R. M. Powell et al., 8 Cir., 174 F.2d 718. Having so determined that question, we did not pass upon the other questions presented by the defendant-appellant. The Supreme Court has changed our minds for us on the question of the application of the Fair Labor Standards Act and has remanded the case to us for determination of the other questions presented on appeal but not heretofore determined. Thereafter, the parties requested and were granted leave to file supplemental briefs. The last brief was filed on September 12, 1950.

We proceed to the determination of the issues now before us. They are: (1) that the burden is upon the plaintiffs to prove the hours worked, i. e., plaintiffs must not only prove that they worked overtime, but that they must establish the hours of overtime worked; (2) that plaintiffs are required to plead and the burden is upon them to prove the coverage of the Portal-to-Portal Act of 1947, i. e., that the activities for which they seek to be compensated were compensable activities within the meaning of Section 2 of said Act, Title 29 U.S.C.A. § 252; (3) that the judgment of the District Court is excessive with respect to each of the plaintiffs in that (a) it is based upon the erroneous finding and conclusion that the salaries paid to plaintiffs were base pay for a 40-hour week instead of a variable or 48-hour work week; (b) because it includes in the computation of hours worked a one-half hour lunch period; and (c) includes as compensable, time prior to the beginning of and following the ending of plaintiffs' regular working shifts; (4) that plaintiffs and each of them were exempt from the provisions of the Fair Labor Standards Act by reason of Section 13(a) (1) of that Act, Title 29 U.S.C.A. § 213(a) (1); (5) that the claims of certain of the plaintiffs with respect to overtime prior to April 5, 1943, are barred by the provisions of Sections 1012 and 1015, R.S.Mo.1939, Mo.R.S.A.; (6) that two of the plaintiffs have died and their actions have not been duly revived by their personal representatives; (7) that because the Portal-to-Portal Act became binding upon the parties to this proceeding and upon the courts on May 14, 1947, and therefore the court erred in refusing to permit appellant to present to it matters under the Portal-to-Portal Act of 1947, and that the judgment of the District Court violates and is contrary to the provisions of the Portal-to-Portal Act in that it includes with respect to each of the plaintiffs an allowance of overtime compensation plus liquidated damages for (a) one-half hour lunch periods, and (b) the time prior to the beginning of and following the ending of plaintiffs' regular working shifts.

Reference should be made to our previous opinion, 174 F.2d 718, and the Supreme Court's opinion in this case, Powell et al. v. United States Cartridge Co., 339 U.S. 497, 70 S.Ct. 755, decided May 8, 1950, for a general statement of the facts relative to the type and nature of the action. Those facts will not be repeated here. Many additional facts necessary to an

understanding of the now to be determined issues will be stated in connection with the determination of each of those issues.

### 1

■ To sustain the plaintiffs' burden to prove the hours each of them worked and the amount of overtime worked, plaintiffs called for and were furnished prior to the trial a detailed statement of the hours which the defendant's time record showed each of the plaintiffs had spent at the defendant's plant. This record was put in evidence by plaintiffs. From it the trial court made its computations upon which the judgment is based. There was a serious dispute concerning whether the plaintiffs should be compensated for all of the time which these records showed they had spent on the defendant's premises. Involved in this dispute was the question of whether they were required to report in advance of the beginning of the regular shift. Also in dispute was the question of whether they were entitled to consider as time worked a 30-minute lunch period. The trial court concluded from the evidence that plaintiffs were entitled to treat as time worked and to be compensated for all of the time shown on defendant's record. That finding appears to have been based to a substantial extent at least upon a printed pamphlet issued by defendant and given to all employees, including these plaintiffs, wherein it was stated:

"There will be eight hours in any working day, and forty hours will constitute a working week. To meet the schedule required of us by the National Defense Program, it will be necessary to employ three shifts on production operations. When production demands require a longer work day or longer work week, the company will pay the legal overtime rate as provided under the Walsh-Healy Act [41 U.S.C.A. § 35 et seq.] and the Fair Labor Standards Act. When three shifts are operating there will be rotation of first, second and third shifts every two weeks. *A lunch period will be allowed on each shift and will be paid for by the company. That is, no deduction will be made for this lunch period.*" (Italics supplied)

"Payment of Overtime:

"Time and a half will be paid in excess of eight hours per day or forty hours per week."

and a bulletin issued to all the plaintiffs, stating that the working hours for plaintiffs would begin thirty minutes prior to the beginning of the regular shift.[1] There was also testimony by a number of the plaintiffs detailing their duties, which included duties to be performed prior to the beginning of their regular shift. From an examination of all of the evidence we are convinced that there was ample justification for the trial court holding that the time prior to the beginning of the regular shifts should properly be treated as working time, and that the 30-minute lunch period was to be compensated for as working time. We are therefore not at liberty to set aside that finding.

### 2

■ Defendant's second contention that it was encumbent upon the plaintiffs to plead affirmatively and to prove that the activities for which they sought compensation were compensable activities within the meaning of Section 2 of the Portal-to-Portal Act is answered in effect by

---

1. "All safety engineers: Effective Friday, June 5, 1942, the working hours for inspectors will be as follows:

"A Shift, 7:30 A.M. to 4:00 P.M.
B Shift, 3:30 A.M. to 12:00 M.
C Shift, 11:30—No, sir, I haven't been inserting those A.M.'s and P.M.'s. It isn't on the exhibit, but take it this way:

"A Shift, 7:30-4:00 P.M.
B Shift, 3:30-12:00 P.M.
C Shift, 11:30-8:00 A.M.
"The time clock will be punched with-

in fifteen minutes before the hour. In order that he may take advantage of the half-hour lap-over in shift time the following procedure for inspectors shall be used:

"1. Punch time clock
2. Report to Chief Inspector's office
3. Check files
4. Obtain note-book and necessary material.
5. Report to unit and contact inspector from preceding shift.
                    S. L. Hartling."

what has been said relative to the foregoing contention of defendant. That is true because the plaintiffs are entitled to recover if they can show that by the terms of their employment they were entitled to compensation for the time prior to the regular shift and for the lunch hour period. They undertook to do that. If they succeeded in doing so, then the Portal-to-Portal Act does not bar such compensation. The trial court found that they had done so and as stated, the finding was sufficiently supported by the record. Hence the requirement as to proof was met by the evidence. Since the time claimed before the beginning of the regular shifts and the 30-minute lunch periods are of the character which the Portal-to-Portal Act requires that there should be a contract expressly providing compensation for, or a custom or practice consistent with an intention that there be compensation for such time and not inconsistent with an existing contract, before compensation may be recovered for such time, a formal compliance with the requirement of the Act would require that the conditions precedent to recovery, specified in the Act, be pleaded. Battaglia v. General Motors Corporation, 2 Cir., 169 F.2d 254; Bonner v. Elizabeth Arden, Inc., 2 Cir., 177 F.2d 703. Plaintiffs should have an opportunity on remand to make the appropriate amendment.

### 3

█ The appellant contends that the evidence shows that the basis of employment was a variable or at least a 48-hour week and that the trial court's finding that plaintiffs were employed on the basis of a regular 40-hour week is erroneous. The amount of judgments for overtime was based on that finding, hence if the finding is erroneous the judgments are excessive. In addition to the statement contained in the pamphlet heretofore quoted, plaintiffs' evidence was to the effect that although each safety engineer would be required to work six 8-hour shifts each week, yet the statement was made by the person employing them at the commencement of their employment that the basic work week was 40 hours. Furthermore, it appears from the tabulation of plaintiffs' time and the amount received therefor, prepared by defendant and offered by plaintiffs in evidence, that when the working time for any of the plaintiffs dropped below 40 hours in one week, such person was docked for the time less than 40 hours that he worked that week, at the rate of pay calculated upon a 40-hour work week. It is true that there was a great deal of evidence in the record which tended to establish the conclusion that plaintiffs were employed on the basis of a variable or a 48-hour week. But, again, the evidence was contradictory and conflicting and we are not at liberty to say under those circumstances that the trial court's finding was erroneous.

### 4

██ The next contention is that the plaintiffs were employed in a bona fide administrative capacity and therefore were exempt from the provisions of the Fair Labor Standards Act. The types of services which are exempt on this ground are defined in Section 541.2 of the Official Regulations of the Wage and Hour Administrator:

"Administrative. The term 'employee employed in a bona fide * * * administrative * * * capacity' in section 13 (a) (1) of the Act shall mean any employee

"(A) who is compensated for his services on a salary or fee basis at a rate of not less than $200 per month (exclusive of board, lodging, or other facilities), and

"(B) (1) who regularly and directly assists an employee employed in a bona fide executive or administrative capacity (as such terms are defined in these regulations), where such assistance is nonmanual in nature and requires the exercise of discretion and independent judgment; or

"(2) who performs under only general supervision, responsible nonmanual office or field work, directly related to management policies or general business operations, along specialized or technical lines requiring special training, experience, or knowledge, and which requires the exercise of discretion and independent judgment * * *."

These plaintiffs were all safety employees. Each was compensated on a salary basis at a rate of not less than $200 per month. Each regularly and directly assisted the supervising personnel in the productive branch of defendant's plant. Plaintiffs' evidence tended to show that the safety employees or engineers had no right whatever to instruct individual employees as to their proper conduct except in cases of imminent emergency when it appeared that loss of life was likely, and then the engineer could only stop the operation and report the situation to a superior. Their evidence tended to show further that all authority to make changes in operating practices or equipment was lodged in other than the safety engineers; that those engineers had slight previous technical education or experience as safety engineers and were not consulted as to changes in practices except insofar as their reports containing suggestions and recommendations might be considered as such; that they conducted no classes of instruction on safety practices and only attended such meetings one hour each week. The duties of all of the plaintiffs were substantially the same. It appears from the evidence that they protested their classification over an extended period of time and these protests finally culminated in a mass meeting. The most cohesive description of the duties of the safety engineers as defined by the defendant is found in a so-called job description made in 1942 during the early stages of defendant's operations before any controversy relative to classification arose, by an Occupational Analyst employed by defendant who had formerly been for four years with the Wage and Hour Division of the United States Department of Labor. Those duties were there described as being 30% of each man's total working time devoted to regular inspection of all property in his area for the purpose of eliminating safety hazards of all kinds; 40% devoted to checking manual movements of employees and pointing out unsafe practices to the supervisor; 5% to seeing that injured employees received first aid; 5% to recommending changes of additional safety devices and new types of equipment; 5% to recommending changes calculated to decrease work hazards in accordance with the engineer's knowledge of safe practices; 8% to the submission of written reports of every accident and suggesting preventive measures; 3% to making reports recommending general safety procedures not connected with a particular accident; 2% to holding meetings of unit and safety committees promoting the adherence to safety regulations through employee cooperation; and 2% to the instruction of groups of employees in proper use of safety equipment with the approval of the department concerned. From all of the evidence on the subject, it is not unlikely that we sitting as a trial court might have reached a different conclusion than the trial court reached on the propriety of the classification of these plaintiffs, but as we have repeatedly pointed out above and repeatedly held in reported cases, by the express direction of the Rules of Civil Procedure 28 U.S.C.A. we may not set aside a finding of fact of a trial court unless that finding is so lacking in evidentiary support as to be clearly erroneous. In this instance we find sufficient conflicting inferences which may be drawn from the evidence to preclude us from holding that the trial court's finding was clearly erroneous.

**5**

It is next contended that the claims of certain of the plaintiffs with respect to overtime prior to April 5, 1943, are barred by the provisions of Section 1012 and 1015 of the Revised Statutes of Missouri, 1939, Mo.R.S.A. Section 1012 provides in general terms that civil actions can only be commenced within the period prescribed in following sections, with a proviso stating when the cause of action shall be deemed to have accrued. Hence, Section 1015 is the really material section. It reads as follows: "§ 1015. What within three years * * * ; second, an action upon a statute for a penalty or forfeiture, where the action is given to the party aggrieved, or to such party and the state."

This Statute of Limitation is not applicable to claims for compensation under the

Fair Labor Standards Act or for the liquidated damages under that Act. And that is true because the liquidated damage provisions of the Fair Labor Standards Act have repeatedly been held not to be penalties or forfeitures, but are, as stated, "liquidated damages".

## 6

The contention that there has not been a proper revival of the action by the personal representatives of two of the deceased plaintiffs need not be considered further than to point out that since for reasons which will hereafter be stated, this cause must be remanded, the trial court will be reinvested with complete authority to pass upon the application for and to order, if found appropriate, the revival of the cause as to these two parties.

## 7

The contention that the trial court should have taken cognizance of the Portal-to-Portal Act and should have permitted the defendant to reopen the case for the purpose of amending the pleadings to set out the defenses available under the new Act and to offer evidence in support of those defenses is well taken. The motion therefor should have been granted. Plaintiffs contend that the trial court had an opportunity from the affidavit that was filed in support of the defendant's motion and in opposition to it by plaintiffs, to pass upon the merits of the question of whether the defendant had any defense under Sections 9 and 11 of the Portal-to-Portal Act, and that by the denial of the motion those questions were determined by the court adversely to the defendant. That could not be. The Portal-to-Portal Act was not in effect at the time this case was tried. It could therefore not have been pleaded at that time and, not having been pleaded, any issues made possible by the Portal-to-Portal Act could not formally have been tendered to the trial court and no evidence peculiar alone to those issues could have been properly admitted, absent the existence of the issues themselves. It is clear that the courts generally, including the Supreme Court, have adopted the judicial policy of permitting the interposition of the defenses made available by the Portal-to Portal Act before the final determination of a cause, in some instances even after the entry of a final judgment on appeal. Alaska Juneau Gold Mining Co. v. Robertson, 331 U.S. 793, 67 S.Ct. 1728, 91 L.Ed. 1821; 149 Madison Avenue Corp. v. Asselta, 331 U.S. 199, 67 S.Ct. 1178, 91 L.Ed. 1432; Robertson v. Alaska Juneau Gold Mining Co., 9 Cir., 157 F.2d 876; St. Johns River Shipbuilding Co. v. Adams, 5 Cir., 164 F.2d 1012; Boerkoel v. Hayes Mfg. Corp., D.C., 76 F.Supp. 771. The propriety of this judicial policy has not been challenged. This case furnishes an excellent illustration of the necessity, in the interest of substantial justice, of following that policy. If the facts as stated by defendant in its affidavit, filed in support of its motion for permission to interpose the defenses under Sections 9 and 11 of the Portal-to-Portal Act were true, or, if we were passing upon the factual issues under Section 11 of the Portal-to-Portal Act upon the record made before the trial court of whether the classification of plaintiffs was in good faith and with reasonable grounds for believing that it was not in violation of the Fair Labor Standards Act, we would be compelled to hold that on the record before us that the trial court abused its discretion in allowing liquidated damages upon the premise that the defendant's action in classifying the plaintiffs had not been shown to be in good faith with reasonable grounds to believe that the classification was not in violation of the Fair Labor Standards Act. But, because as noted, that issue was not made under the pleadings and we are not free to treat as a formal issue disputed facts set up in the affidavits filed on the motion, we cannot and do not pass upon that question now. Nor was the trial court authorized or justified to treat those affidavits as presenting these issues. And if the argument should be advanced that the trial court might have treated the pleadings as amended, for the purpose of presenting these defenses, then the situation is no better, because under those circumstances it was impossible to say with positiveness

that there was no further evidence available to defendant under these defenses than had been incorporated in the record, and, furthermore, if that was all the evidence available on the subject, as already noted, a holding that the defendant had not established the defense under Section 11 which would relieve it of the liquidated damages would have been clearly erroneous. For that reason the cause must be reversed and remanded with directions to the trial court to permit the amendment of the pleadings and to consider any matters presented to it under the Portal-to-Portal Act.

In view of the disposition made of this appeal, no attorney fees on account of this appeal should or need be allowed at this time.

Reversed and remanded.