GLENN L. MARTIN NEBRASKA CO. v.
CULKIN et al.

No. 14482.

United States Court of Appeals
Eighth Circuit.

June 24, 1952.

Rehearing Denied Aug. 15, 1952.

Riddick, Circuit Judge, dissented.

George L. DeLacy, Omaha, Neb. (Leo Eisenstatt, Omaha, Neb., Donald Leach, Columbus, Ohio, and Kennedy, Holland, DeLacy & Svoboda, Omaha, Neb., on the brief), for appellant.

Emmet L. Murphy, Omaha, Neb. (John E. Murphy, Omaha, Neb., on the brief), for appellees.

Before JOHNSEN, RIDDICK and COLLET, Circuit Judges.

COLLET, Circuit Judge.

The primary question is whether the plaintiffs in this action, a number of guards and firemen employed at the Glenn L. Martin plant near Omaha, Nebraska, during World War II, are entitled to recover wages under the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., for a 30-minute period which has been called and which we will refer to as "lunch periods". After making extensive and detailed findings of fact and stating its conclusions of law, the trial court entered judgment for plaintiffs totaling $60,980.14 as the amount of compensation due them. To that was added one-half of that amount as liquidated damages, and $15,000 attorney fees. From that judgment the defendant appeals. The facts material to the issues presented on this appeal follow.

The United States Government erected an airplane assembly and modification plant on the Fort Crook military reservation near Omaha, Nebraska. The entire area containing this plant, consisting of approximately 700 acres, was fenced and guarded. The Government entered into contracts with The Glenn L. Martin Nebraska Company for the operation of the plant and the production and modification of airplanes. In order to carry out those contracts the Martin Company hired many employees. For security reasons all were hired subject to the approval of the Government but were under the direct control and supervision of the Martin Company. During the period of time now material there were from 13,000 to 14,000 persons employed at the plant, which included these plaintiffs.

The guards were charged with the general duty of maintaining order and exercising constant vigilance for the security of the plant. Each guard had certain specific duties relating to an individual post, and a few were assigned as "rovers". Among the duties of the rovers was that of temporarily relieving guards at specific posts. The guards were divided into three shifts. The plant operated on a 24-hour-a-day schedule. From May 4, 1942, until March 6, 1943, the guards on the first shift checked in not later than 7:00 a. m. and checked out not earlier than 3:00 p. m. Those on that shift brought their lunch and were required to eat it while on duty. All of the eight hours between 7:00 a. m. and 3:00 p. m. were treated as working time and compensated for. On March 3, 1943, an order was issued by defendant, effective March 6, 1943, which was as follows:

"Effective Saturday, March 6, the Guards on the first shift will ring in by 6:45 A.M. and ring out after 3:15 P.M. This will mean that the Guards will have 8½ hours on the clock. This should be ample time to get your uniforms changed and receive orders and be on the post at 7:00 A.M.

"Guards will not be allowed to eat on their posts. They will be allowed thirty (30) minutes for lunch. The Rover in this case when on relief will check the Guard out and in during the lunch period. The Guards will be allowed to eat in the Cafeteria during the lunch period.

"The Guards on the second shift will ring in by 2:45 P.M. and ring out after 11:15 P.M. and will follow the instructions as given in the first paragraph, and the second paragraph.

"The Guards on the third shift will ring in by 10:45 P.M. and ring out after 7:15 A.M. and will follow the instructions as given in the first paragraph, and the second paragraph.

"That pertains to all three Companies."

The result of this order was that the shifts overlapped and prevented the possibility of leaving the plant unprotected during the change of shifts. The fifteen minutes prior to 7:00 a. m. and subsequent to 3:00 p. m. were compensated for and are not involved in the present controversy. The timekeeping department was directed to and did deduct the 30-minute lunch period from working time. It is the claim of the guards and firemen for pay for this 30-minute period which constitutes the basis for this action.

The defendant maintained a fire department on the plant. The firemen performed the duties usually incident to that occupation. While they were not specifically included in the above quoted order of March 3, 1943, that order was understood to apply to them as well as the guards and has been so treated throughout these proceedings. The firemen reported prior to that order and during its effective period in the same manner and on the same schedule (described above) as the guards. They were likewise paid for eight hours, and the 30-minute lunch period deducted. Their claim is, like the guards', based upon the hypothesis that the 30-minute lunch period was actually working time for which they should have been but were not compensated.

Complaints were made from time to time by the guards and firemen on account of the deduction of the 30-minute lunch periods from working time, but they continued on the job. On September 17, 1944, the defendant resumed the practice of paying the

984

firemen and guards for the lunch period. The period of time between March 6, 1943, and September 17, 1944, is the period during which the claim for compensation for the 30-minute lunch period is made.

The trial court found that [97 F.Supp. 672]:

> "The employees involved in the present case were not waiting to be engaged; they had been engaged to wait. The defendant contends, however, that even though the employees were 'on call' during the lunch period that the employees did not spend the time during this period predominantly for the benefit of the employer.

> \* \* \* \* \* \*

> "The evidence in this case clearly establishes as a matter of fact that during the 'lunch periods' in question, the employees were engaged in the principal activity of the workweek and were not merely taking care of preliminary or postliminary matters."

This factual conclusion constitutes the focal point of defendant's attack upon the judgment. The errors assigned are:

### I.

That the trial court erred in making the finding that "The evidence in this case clearly establishes as a matter of fact that during the 'lunch periods' in question, the employees were engaged in the principal activity of the workweek and were not merely taking care of preliminary or postliminary matters", and in finding that the 30-minute lunch period constituted hours worked within the meaning of the Fair Labor Standards Act.

### II.

That the trial court erred in its conclusions of law (a) that Section 2 of the Portal-to-Portal Act, 29 U.S.C.A. § 252, was inapplicable and that plaintiffs were not required to plead and prove a contract, custom or practice, to compensate them for the time worked during the lunch period; (b) in holding that plaintiffs' pleadings complied with the requirements of the Portal-to-Portal Act, although the court held that Act inapplicable; (c) in holding that the "de minimis" principle did not apply to the 30-minute lunch periods; (d) in holding that the evidence was sufficient to show that plaintiffs were required to engage in any activities during the 30-minute lunch period which would make that period working time under the Fair Labor Standards Act; (e) in allowing plaintiffs liquidated damages equal to 50 per cent of the amount found due them, because plaintiffs were entitled to no recovery at all and if they were that "defendant showed to the satisfaction of the court that its (the defendant's) action in not paying for the daily thirty-minute lunch periods was in good faith and that it had reasonable grounds for believing that its failure to pay was not a violation of the Fair Labor Standards Act", and that the court abused its discretion in awarding liquidated damages; and (f) in allowing plaintiffs' counsel attorney fees.

■ We do not deem it necessary or desirable to relate in detail the facts describing the exact nature of the duties of the guards and firemen during the 30-minute lunch period upon which the trial court's finding was based that the employees were engaged in the principal activity of their work week during that 30-minute period. We have examined the record and reach the conclusion that the court's finding is amply supported by the evidence.

■■ Much emphasis is placed by defendant upon the fact that only in comparatively few instances did the evidence show that guards or firemen were required to answer calls for fires or to quell disturbances during the 30-minute period in question. But the question was not so much whether the guards and firemen were actually regularly called upon to put down overt acts of violence, sabotage, disturbances, or to put out fires during the 30-minute period, as it was whether they were performing their regular duties during that period and were then substantially performing the duties assigned to them by their employer and were not free to follow pursuits of a purely private nature. Armour & Co. v. Wantock, 323 U.S. 126, 65 S.Ct. 165, 89 L.Ed. 118; Skidmore v. Swift & Co., 323 U.S. 134, 65 S.Ct. 161, 163, 89

L.Ed. 124. As the Supreme Court said in Skidmore v. Swift & Co.:

"For reasons set forth in the Armour case, 323 U.S. 126, 65 S.Ct. 165 [89 L.Ed. 118] decided herewith we hold that no principle of law found either in the statute or in Court decisions precludes waiting time from also being working time. * * * Facts may show that the employee was engaged to wait, or they may show that he waited to be engaged. His compensation may cover both waiting and task, or only performance of the task itself."

Although the guards were constantly obliged to prevent disturbances by their presence and vigilance, and the firemen were likewise obligated to be constantly vigilant to prevent fires, yet both the guards and the firemen served to a considerable extent in a stand-by capacity. In the latter respect both were engaged in their regular duties during the 30-minute period as effectively as if they were putting down disturbances or putting out fires. And if, as the trial court found, these plaintiffs were engaged in the principal activity of their regular work during the 30-minute period, they were entitled to recover compensation therefor unless defendant is correct in one or more of its remaining assignments of error.

The Effect of the Portal-to-Portal Act

 Defendant contends that Section 2 of the Portal-to-Portal Act[1] bars recovery in this action. The trial court held that it did not apply, saying, 97 F. Supp. 661, 674: "Whether the time is Portal-to-Portal time depends upon the nature of the activity engaged in during the period in question; and not upon the term by which the period is known." Defendant relies upon our opinion in United States Cartridge Co. v. Powell, 8 Cir., 185 F.2d 67, in support of its contention that the requirements of Section 2 heretofore noted must be pleaded and proved, while plaintiffs rely on our opinion in Central Missouri Tel. Co. v. Conwell, 8 Cir., 170 F.2d 641, in support of the trial court's conclusion that the Portal-to-Portal Act does not apply under the facts in this case.

Referring to the Powell case, supra, the trial court said:

"The court's attention has been directed to the statement of Judge Collet, writing in the more recent decision in United States Cartridge Company v. Powell, 8 Cir., 1950, 185 F.2d 67, 71: 'Since the time claimed before the beginning of the regular shifts and the 30-minute lunch periods are of the character which the Portal-to-Portal Act requires that there should be a contract expressly providing compensation for, or a custom or practice consistent with an intention that there be compensation for such time and not inconsistent with an existing contract, before compensation may be recovered for such time, a formal compliance with the requirement of the Act would require that the conditions precedent to recovery, specified in the Act, be pleaded.' This court does not understand the foregoing statement, read in its context and limited to the facts involved in the Powell case, to mean

1. "§ 252. Relief from certain existing claims under the Fair Labor Standards Act of 1938, as amended, the Walsh-Healey Act, and the Bacon-Davis Act

"(a) No employer shall be subject to any liability or punishment under the Fair Labor Standards Act of 1938, as amended, the Walsh-Healey Act, or the Bacon-Davis Act (in any action or proceeding commenced prior to or on or after May 14, 1947), on account of the failure of such employer to pay an employee minimum wages, or to pay an employee overtime compensation, for or on account of any activity of an employee engaged in prior to May 14, 1947, except an activity which was compensable by either—

 * * * * * *

"(2) a custom or practice in effect, at the time of such activity, at the establishment or other place where such employee was employed, covering such activity, not inconsistent with a written or nonwritten contract, in effect at the time of such activity, between such employee, his agent, or collective-bargaining representative and his employer." 29 U.S.C. A. § 252.

that time claimed for lunch periods is, in every situation, Portal-to-Portal in character. Whether the time is Portal-to-Portal time depends upon the nature of the activity engaged in during the period in question; and not upon the term by which the period is known. The evidence in this case clearly establishes as a matter of fact that during the 'lunch periods' in question, the employees were engaged in the principal activity of the workweek and were not merely taking care of preliminary or postliminary matters. This being so, the court has concluded that Section 2 of the Portal Act is inapplicable to this case and that the plaintiffs are not required to plead and prove a contract, custom or practice to compensate them for the hours worked during the lunch period. Biggs v. Joshua Hendy Corp., supra [9 Cir., 183 F.2d 515]."

The trial court correctly construed our opinion in the Powell case. As stated in Armour & Co. v. Wantock, supra, 323 loc. cit. 132, 65 S.Ct. loc.cit. 168:

"It is timely again to remind counsel that words of our opinions are to be read in the light of the facts of the case under discussion. To keep opinions within reasonable bounds precludes writing into them every limitation or variation which might be suggested by the circumstances of cases not before the Court."

In the Powell case plaintiffs were relying upon a contract which they claimed entitled them to compensation for the 30-minute lunch period. The defendant was there denying that that was the contract. The trial court had found that it was. We sustained the finding upon the record. Then when we came to consider the defendant's contention that plaintiffs should have been required to plead and prove that the contract entitled them to compensation under the Portal-to-Portal Act, we said in effect that the plaintiffs had made that proof. The language used was:

"Defendant's second contention that it was encumbent upon the plaintiffs to plead affirmatively and to prove that the activities for which they sought

compensation were compensable activities within the meaning of Section 2 of the Portal-to-Portal Act is answered in effect by what has been said relative to the foregoing contention of defendant. That is true because the plaintiffs are entitled to recover if they can show that by the terms of their employment they were entitled to compensation for the time prior to the regular shift and for the lunch hour period. They undertook to do that. If they succeeded in doing so, then the Portal-to-Portal Act does not bar such compensation. The trial court found that they had done so and as stated, the finding was sufficiently supported by the record. Hence the requirement as to proof was met by the evidence. Since the time claimed before the beginning of the regular shifts and the 30-minute lunch periods are of the character which the Portal-to-Portal Act requires that there should be a contract expressly providing compensation for, or a custom or practice consistent with an intention that there be compensation for such time and not inconsistent with an existing contract, before compensation may be recovered for such time, a formal compliance with the requirement of the Act would require that the conditions precedent to recovery, specified in the Act, be pleaded. Battaglia v. General Motors Corporation, 2 Cir., 169 F.2d 254; Bonner v. Elizabeth Arden, Inc., 2 Cir., 177 F.2d 703. Plaintiffs should have an opportunity on remand to make the appropriate amendment."

It should be noted that in the Powell case the issue under discussion was whether the *contract* provided for payment for the lunch period, not that the 30-minute lunch period was actually devoted to the regular work of the employees. In other words, the issue presented was whether the time which was treated as nonworking time was to be compensated for by a specific contract—one of the requirements of the Portal-to-Portal Act, which after the enactment of that Act had to be pleaded if wages were to be recovered

for that type of time. In the case of Battaglia v. General Motors Corporation, 2 Cir., 169 F.2d 254, cited by us, that was the character of time for which compensation was sought and which that court held had to be supported by pleading and proof of the requirement of the Portal-to-Portal Act. The same is true of the facts in the other case cited by us, Bonner v. Elizabeth Arden, Inc., 2 Cir., 177 F.2d 703. And we were remanding the case to afford defendant an opportunity which had been denied it, to plead the Portal-to-Portal Act as a defense. Naturally we called attention to the fact that since the Portal-to-Portal Act had not been in effect at the time of the trial and since it was to be pleaded on remand as a defense, that plaintiffs should also have the right to amend their pleadings to conform to their evidence and answer the requirements of the Portal-to-Portal Act.[2]

But in the Central Missouri Telephone Co. case the situation was entirely different. There the plaintiffs were contending that the wages sought were for ordinary working time, as plaintiffs contend in the case at bar. We held that since the time in dispute was shown to be working time, the Portal-to-Portal Act did not apply, citing several authorities. There is no conflict between the two lines of cases. The facts distinguish them. The case at bar falls in the class with the Central Missouri Telephone Co. case, as the trial court correctly concluded.

Defendant's contention that plaintiffs' complaint did not sufficiently plead the requirement of the Portal-to-Portal Act becomes abstract in the light of the inapplicability of that Act.

The facts in this case do not bring it within the de minimis principle. United States Cartridge Co. v. Powell, supra; Landaas v. Canister Co., 3 Cir., 188 F.2d 768. Defendant cites McComb v. C. A. Swanson & Sons, D.C.Neb., 77 F.Supp. 716; Bridgeman v. Ford, Bacon & Davis, 8 Cir., 161 F.2d 962; Tully v. Joshua

Hendy Corp., D.C., 79 F.Supp. 709; Addison v. Huron Stevedoring Corp., D.C., 96 F.Supp. 142, in support of its argument that the rule of de minimis should be applied. In the McComb-Swanson case the time involved was four minutes for changing clothes before work and five or six minutes after regular work. In the Bridgeman case the trial court held that truck operators required to spend 20 minutes out of each rest period of eight hours in actual work were entitled to compensation for those 20-minute periods, but that firemen who spent some time (the exact amount not very satisfactorily shown) out of their 8-hour rest period performing tasks not required by the employer and some additional time during the rest period performing other duties required to be performed during the working hours, for which they were paid, performed no compensable work. We affirmed on the ground that we were not able to say upon the record that the trial court's finding was without substantial basis and observed that the time spent by the firemen "might well have been considered by the district judge to fall within the de minimis rule." [161 F.2d 962, 965] The facts in the above noted cases distinguish them from the case at bar and we do not deem them controlling here.

In Addison v. Huron Stevedoring Corp., D.C.N.Y., 96 F.Supp. 142, 181, the court held that the rule of " 'de minimus non curat lex' " should be applied to anything less than $1.00 per week, but that a dollar a week (less than that involved here) was not a trivial matter to a working man. We do not agree with the conclusions stated in Tully v. Joshua Hendy Corp., D.C.Cal., 79 F.Supp. 709.

The point that the trial court erred in holding that the evidence was sufficient to show that plaintiffs were required to engage in any activities during the 30-minute lunch period which would make the 30-minute periods working time under the Fair Labor Standards Act is answered by what has already been said.

2. Since the Powell case was remanded for further hearing we avoid any implications, other than what was said on the former appeal, as to the legal effect of any new evidence in that case.

The allowance of liquidated damages is discretionary with the trial court. Fred Wolferman, Inc., v. Gustafson, 8 Cir., 169 F.2d 759; Day & Zimmermann v. Reid, 8 Cir., 168 F.2d 356; Landaas v. Canister Co., 3 Cir., 188 F.2d 768. In the absence of a clear abuse of that discretion, the trial court's action will not be set aside. No such abuse has been shown. The attorney fee was properly allowed by the trial court. Fair Labor Standards Act, 29 U.S.C.A. § 216(b).

We are requested to allow plaintiffs an additional attorney fee on this appeal. Under all the facts and circumstances in this case, and in view of the previous allowance for attorney fees, that request should be and is denied.

Finding no error, the judgment is affirmed.

RIDDICK, Circuit Judge (dissenting).

Plaintiffs were employed as guards or firemen at defendant's plant. Their employment was subject to the approval of the United States. They were required to bear arms and wear the identifying uniforms furnished them while within the plant.

From January 1, 1942, until March 6, 1943, plaintiffs were employed and paid for an eight-hour day. During this period plaintiffs were required to spend one-half hour or more each day, in addition to their regular eight-hour work day, in reporting for duty, answering roll call, changing from their civilian clothes to their uniforms, and in receiving arms and other equipment before reporting to their posts of duty, and at the conclusion of their eight-hour work day in changing from their uniforms to their civilian clothes and turning in their equipment. For this time in excess of their eight hours of work they were not paid, and payment was not required either by an express provision of their contract of employment or by any custom or practice existing at defendant's plant. During this period plaintiffs were allowed no time off for lunch. They were permitted to bring their lunches and eat while at their posts of duty as and when their work permitted.

After March 6, 1943, and until September 17, 1944, the work hours of plaintiffs were changed. What brought about the change the evidence does not reveal, but under it the plaintiffs were still employed for an eight-hour work day which began fifteen minutes before they reached the posts to which they were assigned and ended fifteen minutes after leaving their posts. For this half hour which plaintiffs spent in reporting for duty, in changing from civilian to official clothes, and in receiving equipment before going to their posts and in changing from official to civilian clothes and turning in equipment after leaving their posts, the plaintiffs were paid. But during this period plaintiffs were allowed thirty minutes off each day for lunch for which they received no compensation and for which no express provision of their contract of employment or any custom or practice existing at defendant's plant required payment. During the thirty minutes allowed for lunch plaintiffs were permitted to eat at defendant's cafeterias, or, if they preferred, to bring their own lunches and to eat wherever they wished during the lunch period allowed them.

Beginning on September 17, 1944, the hours of work for plaintiffs were again changed. From the date mentioned until the termination of operations at defendant's plant the thirty minutes allowance of time off for lunch was abolished and plaintiffs were paid for eight and one-half hours each day. During this period plaintiffs were required, if they ate lunch, to bring it with them and eat at their posts of duty.

The first complaint in this action was filed on January 11, 1945, by four plaintiffs on behalf of themselves and as representatives of 109 similarly-situated employees. On March 2, 1945, the same plaintiffs filed an amendment to the complaint on behalf of 117 additional similarly-situated employees. And on November 5, 1946, the second amended complaint added 48 employees. The claim stated in these complaints was for the recovery of alleged unpaid overtime compensation and liquidated damages and, in addition, attorney's fees and costs. Each of these complaints charged that plaintiffs

were employed by defendant in three separate shifts of eight hours each until September 1944, and thereafter in three shifts of eight and one-half hours each, for which they were paid. Unpaid overtime compensation was claimed throughout the period of employment for time occupied by plaintiffs in reporting for duty, changing uniforms, and receiving equipment before the beginning of their respective shifts, and in changing from uniforms to civilian clothes and turning in equipment at the conclusion of their respective shifts; and for the thirty minutes each day allowed for lunch in the period beginning March 6, 1943, and ending September 16, 1944.

The Portal-to-Portal Act of 1947 became effective May 14, 1947. On June 7, 1947, the defendant moved to dismiss the action "for the reason that the jurisdiction of the alleged cause of action * * * is divested this Court by Section 2(d) of the Portal-to-Portal Act of 1947, for the reason that the activities set forth in the Complaint and Amendments thereto filed herein are not compensable activities as defined in Sections 2(a) and (b) of the Portal-to-Portal Act of 1947."

In response to this motion plaintiffs filed a supplemental pleading changing their claim for relief. In this pleading they alleged that they were employed for a work day of eight and one-half hours instead of eight hours throughout the time of their employment. They denied that they claimed "or ever have claimed" payment for the time spent by them immediately prior to or immediately subsequent to the eight and one-half hour shift; that throughout the entire period of employment plaintiffs were entitled to compensation for the entire period of eight and one-half hours "under the universal custom and practice in effect at said time, and for many years prior thereto * * *" and "under the general non-written contract of employment in effect between Defendant and each of said employees." The prayer of this pleading was that the motion to dismiss be denied and that plaintiffs have judgment "as prayed in their said original Complaint and First and Second Amendments thereto."

The District Court reserved decision on the motion to dismiss until the trial on the merits, and granted defendant time in which to plead further. In its answer defendant denied the material allegations of plaintiffs' various pleadings, set up numerous defenses no longer important in the case because abandoned by defendant or overruled by decisions of the Supreme Court before the case came to trial, and repeated by way of defense the provisions of the Portal-to-Portal Act of 1947 relied on in its motion to dismiss.

Both parties amended their pleadings by leave of court during the course of the trial. Plaintiffs' amendment alleged:

"That it was the custom and practice generally of the above named defendant at the premises of said defendant aforesaid and where each and all of said plaintiffs were employed throughout the entire period involved in this action and particularly throughout the years 1943 and 1944, to pay its employees on the basis of time and one-half for all hours of actual working time of each such employee in excess of 40 hours in any one work week; and that all such actual working time was compensable under said custom and practice. That, however, defendant particularly throughout the period of March 6, 1943, to September 16, 1944, wrongfully declined and refused to consider the activities of these plaintiffs during their alleged one-half hour lunch period as being actual working time. * * *"

Defendant's amendments to its pleadings alleged as true the facts set out at the beginning of this opinion, denied the existence of a contract, written or non-written, or a practice or custom requiring payments to plaintiffs other than those made, and alleged that its conduct in not paying the plaintiffs compensation for the thirty-minute lunch period between March 6, 1943, and September 17, 1944, or for any activities performed during said period was in good faith, and that the defendant had reasonable grounds for belief that its omission so to do was not

in violation of the Fair Labor Standards Act of 1938, as amended.

At the beginning of the trial plaintiffs abandoned all claims for unpaid compensation except for the thirty-minute lunch period allowed them between March 6, 1943, and September 17, 1944. The real question at issue was whether the thirty-minute lunch period was compensable working time in view of the provisions of the Portal-to-Portal Act of 1947 relied on by the defendant. On this issue the court found that the thirty-minute period was not compensable by an express provision of the contract of employment, and that the allegations of a practice or custom for compensation for this period in plaintiffs' pleadings were insufficient to raise the issue. The trial court also found that the defendant adopted the arrangement for a thirty-minute lunch period in good faith and with reasonable grounds for belief that it was not in violation of the Fair Labor Standards Act, as amended. But the trial court concluded that although the lunch period was not compensable working time by contract or custom or practice, it was, nevertheless, compensable working time under the Fair Labor Standards Act of 1938, because plaintiffs during the thirty-minute period were subject to call to active duty in case of emergency, and because during the lunch period plaintiffs were required to wear their uniforms including their caps, and to bear their sidearms or portable telephone as required while on active duty.

The court said:

" * * * When the guards were relieved for lunch they could go either to the nearest cafeteria or to the smoking area. Regardless of where they went, they were on duty and were required to remain in full uniform. The evidence shows that they could not even remove their visored caps or sidearms while eating. If any disturbance arose, the guards were obligated to take the appropriate action even if it meant putting aside their lunch. In certain of the cafeterias there were signal lights which were used to contact the various members of the protective force and guards were, in a rela-

tively few instances, required to leave their meal in response to calls. The guards testified that they were cautioned to watch for employees without badges and that on one or two occasions a guard did take action in that regard during his lunch period. Though the instances where a guard was required to take affirmative action were not relatively great, the court cannot lose sight of the fact that the mere presence of a guard fully uniformed, anywhere in the plant area, was a deterrent to lawlessness and necessarily beneficial to the defendant.

\* \* \* \* \* \*

" * * * These firemen carried plug-in telephones, which they were required to take with them to the cafeteria. In some of the cafeterias there were signal lights on the walls which the firemen had to observe during their lunch period. When a certain signal would flash, the fireman beckoned would plug in his phone and answer the call. These firemen were also required to remain in full uniform the same as the others, during the lunch period.

" * * * Though the instances in which such affirmative action was required are relatively few, it is nonetheless apparent that the firemen were required to be constantly vigilant and consequently, even during the lunch period, their time was not their own, but belonged to the company."

The evidence on which the court reached the conclusion stated in its opinion came from only twelve of the more than 250 plaintiffs. None who testified could remember a specific instance of a call to active duty during his lunch period. All admitted that unless called to duty they had an uninterrupted thirty minutes for lunch. All admitted that if the lunch period was temporarily interrupted by a call to duty the employee could return to lunch at a later period. Only one witness testified that he was always on duty throughout the lunch period. His testimony was contradicted by the evidence on behalf of the de-

fendant supported by defendant's timekeeping records.

I am unable to find in the facts as found by the court substantial evidence for the inference that plaintiffs were engaged in compensable work during the thirty-minute lunch period allowed them. The facts, in my opinion, do not remove this action from the class denounced by the Portal-to-Portal Act of 1947. This court's decision in Central Missouri Telephone Co. v. Conwell, 8 Cir., 170 F.2d 641, is distinguishable on the facts.

In the Conwell case, as stated in the opinion, 170 F.2d at pages 645–646:

"The employees here involved were employed as night switchboard operators. They were on what is termed an eleven hour tour of duty, which required them to go on duty at nine o'clock in the evening and to remain there until eight o'clock the following morning. They were paid for an eight hour tour until 1943. The difference between the time compensated for and the eleven hours was designated as sleeping time and a cot was furnished by defendant and placed in a room near the switchboard so that the operator might utilize such time as her duties permitted in rest or sleep. * * *

"* * * The number of calls through each of the exchanges varied greatly. The load, as it is called in the record, usually decreased considerably by eleven o'clock or midnight, and thereafter calls were infrequent. Often there were considerable periods of time when there were no calls, and other periods when calls were frequent, requiring constant attention to the board. * * * The operators were not permitted to leave the premises or the room in which the switchboard was located between the time they went on duty at nine o'clock in the evening and the time their tour of duty ended at eight o'clock the following morning. Some nights the operators were able to get several hours of uninterrupted sleep, while other nights they were disturbed at frequent intervals and obtained very little sleep. In any event they were required to be in the exchange ready to serve. Not only were they in readiness but at least from time to time they rendered very considerable necessary service, for which they confessedly received no compensation. They were not there for the purpose of sleep nor for any purpose of their own, but for their employer's benefit."

The facts here are different. Plaintiffs were employed for an eight-hour tour of duty and paid for it. They were allowed to leave their posts of duty to go to the defendant's cafeteria or to the smoking area or somewhere else in defendant's plant for a period of thirty minutes and eat lunch. This arrangement was in effect for 21 months. Throughout this time any one of the plaintiffs was subject to call to active duty if, and only if, an emergency arose which required his return to duty. That plaintiffs while eating lunch were required to be alert for possible emergencies requiring their attention loses significance in view of the evidence that none occurred during the 21 months involved in the action. The fact that the plaintiffs were required to eat in uniforms, fully accoutered, is of no significance, but a necessary incident of their status as guards and firemen. Since it required thirty minutes for the plaintiffs to change from civilian clothes to uniforms and from uniforms back to civilian clothes, it is apparent that another thirty minutes would have been required for this operation in addition to the thirty minutes allowed for lunch.

Read in the light of the facts involved, the Conwell case is not authority for the proposition that the Portal-to-Portal Act of 1947 was directed solely to claims for compensation for strictly preliminary and postliminary activities. The purpose of the Act, as clearly shown in Section 1, is in the absence of a contract or custom requiring compensation to outlaw actions under the Fair Labor Standards Act of 1938 for failure of an employer to pay its employees for time spent on the employer's premises which never in industry had been regarded by either employer or employee as compensable work time. The Act was directed at certain

court decisions which had included such activities in work time as a matter of statutory interpretation. All that the Conwell case holds is that an employer may not by anything in the Portal-to-Portal Act of 1947 arbitrarily divide a required tour of duty into work time and sleeping time or into compensable time and non-compensable time. The case would apply here if during the time when plaintiffs were allowed no time off for lunch the defendant had attempted to deduct thirty minutes from their eight-hour tour of duty by arbitrarily classifying it as eating time.

This action is not a true class action, but a consolidation for trial of more than 250 separate claims. The action is not one to recover for time spent on calls to duty during an allowed lunch period. If it were the fact that one employee never received the benefit of thirty minutes time off for lunch would not entitle those who did to recover, nor would evidence supporting the claims of some employees support the claims of those who offered no evidence.

The judgment appealed from should be reversed and the action dismissed.