**LANDAAS et al. v. CANISTER CO. et al.**

Civ. A. No. 9647.

United States District Court
D. New Jersey.

July 12, 1950.

I. Herbert Levy, Trenton, N. J., of counsel, Joseph Goldberg, New York City, for plaintiffs.

McCarter, English & Studer, Newark, N. J., by Ward J. Herbert, Newark, N. J., for defendants.

MADDEN, District Judge.

This is an action commenced in January, 1947, by 103 plaintiffs to recover alleged unpaid overtime compensation, liquidated damages and attorneys' fees pursuant to the Fair Labor Standards Act of 1938, 29 U.S. C.A. § 201 et seq. Subsequent to the institution of suit, but prior to trial, Congress amended the Act by the Portal-to-Portal Act of 1947, 29 U.S.C.A. § 251 et seq.

The case was called for trial February 14, 1949, and at that time the court permitted plaintiffs' amendment of the complaint to come within the provisions of the Portal-to-Portal Act. With the Court finding no element of surprise presented by such amendments, it proceeded with the trial. The facts briefly stated are as follows:

The defendants, The Canister Company (a partnership) and The Canister Company, Inc. (a corporation), now by stipulation lows:

assuming responsibility, were manufacturing goods for interstate commerce. During the years in question they put into effect a so called "attendance bonus" to be paid to employees in the machine shop at certain rates for their hours in attendance at work during each work week.

The facts surrounding the situation are as follows. Defendants were engaged in essential work during the war period, 1942, 1943, and 1944. One seeking employment would go to the employment office of the defendants and there be interviewed and if thought to be desirable would be sent to the foreman or head of the particular department where again he would be interviewed by that individual and the head of the department would determine the rate of pay according to applicant's qualifications and classification. The head of the department would then give applicant a card showing his hiring and other data and instruct applicant to return to employment department. Upon return to the employment department applicant would be hired in accordance with the findings of the head of the department and then the provisions of the attendance bonus plan would be explained to the new worker; that if he worked continuously for the defendant companies he would, at the end of six months, receive a bonus based at the rate of either 5 cents or 10 cents per hour for each and every hour spent in attendance at work for the company in some productive capacity; if he left prior to the six month period he would receive nothing.

During the time involved there was in force a labor contract existing between the defendant companies and the bargaining agent for the employees, which among other things, concerning the bonus, provided as follows:

"The attendance bonus now in force of five (5¢) cents an hour for apprentices regularly employed in the machine shop, and ten (10¢) cents an hour for all employees of the Employer regularly employed in the machine shop, exclusive of supervisory employees or clerical workers and apprentices, shall remain in effect during the term of this agreement, subject to the terms and conditions under which such bonus was granted by the Employer to the employees; namely, such bonus shall not become earned and payable to the employee until he has been in the employ of the Employer Company for six consecutive months when he will be paid in a lump sum the bonus earned during such six consecutive months' period, and will continue for each succeeding period of six consecutive months that he remains in the employ of the Employer Company while the bonus remains in effect. Any employee, upon ceasing to be employed by the Employer Company, automatically forfeits any right of claim for bonus for that portion of the consecutive six months' period which he has served and has not completed.

"Subject to the term of this agreement, the Employer Company retains the unqualified right to discontinue the bonus whenever it sees fit.

"It is understood by all parties that the bonus shall not be considered as added compensation, but will be paid merely as a gratuity to aid in decreasing labor turnover and to further good feeling between the Employer Company and its employees."

This labor agreement was renewed June 9, 1942, and the new contract concerning this question provided as follows: "Article IX—Attendance Bonus. The bonus to encourage regular attendance and reduce labor turnover is not compensation but an added gratuity. The Employer retains the unqualified right to discontinue it at any time after the expiration date of this agreement, in case of automatic renewal. It shall be payable in a lump sum after each period of six (6) months of employment while the bonus remains in effect after the execution and ratification of this agreement, and for the duration of its term only, and not automatically renewable. Apprentices shall receive a bonus of twelve and one-half (12½¢) cents an hour and mechanics shall receive seventeen and one-half (17½¢) cents an hour as an attendance bonus. In line with the policy heretofore established, this does not include laborers, clerical and supervisory employees. Employees joining the armed forces of the United States shall be paid their accumulated bonuses on leaving. In the case of death, the accumulated bonuses shall be paid to the widow of the deceased employee, or his estate."

The labor contract of June 9, 1942, was renewed on November 26, 1943, and concerning this question provided as follows: "Section 13: Attendance Bonus. The attendance bonus in the Machinery Division for all hourly-paid-regular-production employees, apprentices and women learners, now in effect, shall remain in effect for the duration of this agreement; women learners' bonus to be the same as that of apprentices."

When the bonus was paid to the employee no deductions were made by the companies for social security, unemployment compensation or withholding tax upon the theory that it was a gift voluntarily paid by the companies. However, each week with his pay check an employee would receive a slip of paper (Exhibits P. 7, P. 8, D. 1, and D. 2) which read as follows:

"Attendance Bonus
(Not Computed on the Basis of Measured Work Performed)
Subject to conditions which were made clear to you, the total sum credited to you up to ...........
amounts to ............. dollars payable ......................
The Canister Company."

When received by the employee the blank spaces were appropriately filled in so that it clearly informed the employee how much bonus he had coming to him; when it would be paid and that he could rely upon its receipt if he stayed in the employ of the companies until the bonus payment date.

Therefore, it seemed that upon the basis of the authority of Bay Ridge Operating Co. v. Aaron, 334 U.S. 446, 68 S.Ct. 1186, 1194, 92 L.Ed. 1502; Walling v. Richmond Screw Anchor Co., 2 Cir., 154 F.2d 780, and others, that these bonus payments would be considered as part of "the regular rate of pay" under the provisions of the Fair Labor Standards Act, as amended, and the plaintiffs would be entitled to overtime upon the bonus for which suit was instituted.

However, prior to disposition of the matter by the Court, Congress again amended the Act, October 26, 1949, 63 Stat. 912, 29 U.S.C.A. § 207, and by provisions of Sec. 7, sub-paragraph (d), specifically interpreted "regular rate of pay" as used in the Act.

This presented two problems to the Court: (A) Could such amendment subsequent to the trial affect the rights of the parties? and (B) Did such amendment alter the interpretation of the Act as far as this particular case was concerned? The Court, therefore, set the matter down for reargument and rebriefing on these particular points. This has been accomplished.

It seems to the Court that Congress had the right, in its legislative powers, to define by subsequent legislation a term of

prior legislation as they have done here, for in speaking of this question in Walling v. Belo Corp., 316 U.S. 624, at page 634, 62 S.Ct. 1223, at page 1228, 86 L.Ed. 1716, Mr. Justice Brynes said: "The problem presented by this case is difficult—difficult because we are asked to provide a rigid definition of 'regular rate' when Congress has failed to provide one. Presumably Congress refrained from attempting such a definition because the employment relationships to which the Act would apply were so various and unpredictable. And that which it was unwise for Congress to do, this Court should not do. When employer and employees have agreed upon an arrangement which has proven mutually satisfactory, we should not upset it and approve an inflexible and artificial interpretation of the Act which finds no support in its text and which as a practical matter eliminates the possibility of steady income to employees with irregular hours. Where the question is as close as this one, it is well to follow the Congressional lead and to afford the fullest possible scope to agreements among the individuals who are actually affected. This policy is based upon a common sense recognition of the special problems confronting employer and employee in business where the work hours fluctuate from week to week and from day to day. Many such employees value the security of a regular weekly income. They want to operate on a family budget, to make commitments for payments on homes and automobiles and insurance. Congress has said nothing to prevent this desirable objective. This Court should not."

Therefore, it seems that we must look directly at the statute and see what Congress has said. Those pertinent parts of Sec. 7, supra, are as follows:

"(d) As used in this section the 'regular rate' at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee, but shall not be deemed to include—

"(1) sums paid as gifts; payments in the nature of gifts made at Christmas time or on other special occasions, as a reward for service, *the amounts of which are not measured by or dependent on hours worked, production, or efficiency;* * * *

"(3) sums paid in recognition of services performed during a given period if either, (a) both the fact that payment is to be made and the amount of the payment are determined at the sole discretion of the employer at or near the end of the period *and not pursuant to any prior contract, agreement, or promise causing the employee to expect such payments regularly;* or (b) the payments are made pursuant to a bona fide profit-sharing plan or trust or bona fide thrift or savings plan, meeting the requirements of the Administrator set forth in appropriate regulations which he shall issue, having due regard among other relevant factors, to the extent to which the amounts paid to the employee are determined without regard to hours of work, production, or efficiency; or (c) the payments are talent fees (as such talent fees are defined and delimited by regulations of the Administrator) paid to performers, including announcers, on radio and television programs; * * *

"(5) extra compensation provided by a premium rate paid for certain hours worked by the employee in any day or workweek because such hours are hours worked in excess of eight in a day or forty in a workweek or in excess of the employee's normal working hours or regular working hours, as the case may be;

"(6) extra compensation provided by a premium rate paid for work by the employee on Saturdays, Sundays, holidays, or regular days of rest, or on the sixth or seventh day of the workweek, where such premium rate is not less than one and one-half times the rate established in good faith for like work performed in nonovertime hours on other days; or

"(7) extra compensation provided by a premimum rate paid to the employee, in pursuance of an applicable employment contract or collective-bargaining agreement, for work outside of the hours established in good faith by the contract or agreement as the basic, normal, or regular workday (not exceeding eight hours) or

workweek (not exceeding forty hours) where such premium rate is not less than one and one-half times the rate established in good faith by the contract or agreement for like work performed during such workday or workweek." (Emphasis supplied.)

It seems to the Court that the key to the situation appears in these phrases of the legislation:

(d) (1) the amounts of which are not measured by, or dependent on, hours worked, production or efficiency;

(d) (3) (a) and not pursuant to any prior contract, agreement or promise, causing the employee to expect such payments regularly.

While not binding upon the Court, it seems that the same views are held by the Administrator for in an Interpretation Bulletin issued January, 1950 (Part 778) at page 19 (part 778.6(d) ), he said: "The bonus, to be excluded, must not be paid 'pursuant to any prior contract, agreement or promise.' For example, any bonus which is promised to employees upon hiring or which is the result of collective bargaining would not be excluded from the regular rate under this subsection. Bonuses which are announced to employees to induce them to work more steadily or more rapidly or more efficiently or to remain with the firm are regarded as part of the regular rate of pay. Attendance bonuses, individual or group production bonuses, bonuses for quality and accuracy of work, bonuses contingent upon the employee's continuing in employment until the time the payment is to be made and the like are in this category. They must be included in the regular rate of pay."

Therefore, it seems to the Court that Congress meant in situations of this sort, while in certain ways the payment of the bonus was conditional, nevertheless, the amounts were measured by hours worked and were pursuant to a contract or promise causing the employee to expect such payments regularly and they are, therefore, to be included in the regular rate of pay as established by the Act.

In its legislative wisdom, Congress has also, by the provisions of the Portal-to-Portal Amendment to the Fair Labor Standards Act, 29 U.S.C.A. § 260, made it discretionary with the Court whether single or double damages should be awarded. After reviewing all the facts of the present case, the Court finds that the defendant companies have shown to the satisfaction of the Court that their failure to pay the overtime in question was in good faith and they had reasonable grounds for believing that their act was not a violation of the Fair Labor Standards Act of 1938, as amended, and consequently the plaintiffs will be awarded single damages only together with reasonable attorneys' fees.

Therefore, judgment will go for plaintiffs in accordance with this opinion for single damages as shown by plaintiffs' exhibit P-6, for each and every plaintiff. Counsel may submit findings of fact and conclusions of law, and if unable, by conference, to agree upon reasonable attorneys' fees, application shall be made to the Court.