**LANDAAS et al. v. CANISTER CO. et al.**
(two cases).

Nos. 10360, 10361.

United States Court of Appeals
Third Circuit.

Argued April 5, 1951.

Filed April 26, 1951.

Ward J. Herbert, Newark, N. J. (McCarter, English & Studer, Newark, N. J., on the brief), for Canister Co. et al.

Joseph Goldberg, New York City (Jerome Y. Sturm, New York City, I. Herbert Levy, Trenton, N. J., on the brief), for Landaas et al.

Before BIGGS, Chief Judge and MARIS and GOODRICH, Circuit Judges.

GOODRICH, Circuit Judge.

This case involves suit for unpaid overtime compensation provided by the Fair Labor Standards Act of 1938. 29 U.S.C.A. §§ 201–219. The court below allowed the claimants the compensation claimed, denied liquidated damages and interest and awarded attorneys' fees. D.C.N.J. 1950, 91 F.Supp. 620. Both sides appeal. There are five questions in the case.

▇▇ (a) The first and most important question is whether the employees are entitled to overtime rates on hours over forty each week applied to what was called an "attendance bonus." This depends upon whether the "attendance bonus" is to be treated as part of the "regular rate" of pay in computing compensation for over-

time under the statute.[1] The suing employees claim they were not paid the overtime to which they were entitled from March 1, 1941, to June 9, 1944.

Here are the facts: The employer[2] was engaged in some important work for the Navy. It desired to reduce absenteeism and labor turnover. When a man applied for work he was interviewed by those in charge of the technical department where he sought employment. If hired he was sent back to the personnel office for various details. The attendance bonus was then explained to him. By virtue of the attendance bonus the employee was entitled to so much extra pay for every hour he worked, but he received nothing if he quit before the end of a six months' period.[3] On each payday the employee was given a slip of paper showing how much attendance bonus he had accumulated in the six months' period then in progress. At the end of the six months' period the bonus checks were separately distributed by an officer of the company who gave them to the employees personally. During the years in question the payment of this attendance bonus was provided for in the contract made between the company and the bargaining union. The terms of the 1941 contract speak of "the attendance bonus now in force" so that its payment was evidently a matter of earlier custom on the part of the employer. The wording and the rates with regard to the per hour payment varied with the different contracts, but for the years in question nothing turns on that.

There was also inserted in each contract these two paragraphs:

"Subject to the terms of this agreement, the Employer Company retains the unqualified right to discontinue the bonus whenever it sees fit.

"It is understood by all parties that the bonus shall not be considered as added compensation, but will be paid merely as a gratuity to aid in decreasing labor turnover and to further good feeling between the Employer Company and its employees."

Now we get down to the main question. There is no dispute between employees and company with regard to the hourly wages paid them or the allowance for overtime on those wages. The only question we have here is whether this provision for attendance bonus was part of an employee's regular rate of pay under Section 7 of the statute.[4] If it was, he is entitled to have time and a half on the per hour provision for attendance bonus for the hours over forty he worked each week. If not, the company has paid him everything it owes him.

We think on this question that the plaintiffs are right and their employer is wrong. It is true that the bonus in question was not the result of increased productivity on the part of the worker. But it was the result of something which the company felt important enough to pay its good money for. That something was continuous service by the workers. It was an item which the company and the union bargained about and provision for bonus payment was put into the union contracts.

1. "No employer shall * * * employ any of his employees who is engaged in commerce or in the production of goods for commerce—* * * [over forty hours a week] unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." FLSA § 7, 52 Stat. 1063 (1938), 29 U.S.C.A. § 207(a).

2. There are two defendant-employers, but one succeeded the other and by stipulation they are regarded as a single employer. They shall be so treated in this opinion. There is no question but that plaintiffs were engaged in interstate commerce.

3. There was an unimportant modification made for men who went into the armed forces.

4. Note 1 supra. The Fair Labor Standards Amendments of 1949, 63 Stat. 913 (1949), 29 U.S.C.A. § 207(d), spell out in some detail the Congressional meaning of "regular rate" of pay. The amendments may have changed the law in some respects, but the outcome in the case at bar would be the same even if the amendments controlled. See § 207(d) (1) and (3) and the Interpretative Bulletin of the Wage and Hour Administrator, January 19, 1950, 15 F.R. 628 (1950). We need not consider, therefore, the question of the extent to which, if at all, the amendments are retroactive.

Regardless of that, we think on simple principles of contract, the offer of attendance bonus was made to each employee after he was hired. It was in effect: "If you will be our employee for at least six months we will pay you so much extra for every hour you work." The employee accepted the offer by remaining employed during that period, thus giving up his privilege to quit at any time. We think under elementary principles of contract law there was an offer and acceptance which comprised an enforceable agreement to recover the amount of attendance bonus money thus earned.

What is said above takes care of the point made by the employer that certain employees were not in the bargaining union and, therefore, not covered by the contract. In the view we take of the matter there was an individual contract with each employee and whether he was also covered by the union contract does not matter.

Was the bonus a part of the "regular" rate of pay? If "regular" is a matter of time, the fact that the interval between paydays was six months rather than one week or one month is not sufficient to deprive the payment of the element of regularity. The rotation of the seasons is a regular matter even though each one comes but once a year. If "regular" in this connection means "constituted in accordance with usage or contract" what we have said above already covers it.

Argument for the employer makes much of the paragraphs in the successive union contracts to the effect that the attendance bonus is purely a gratuity. It argues that contracts between the parties should be respected, especially when made between a strong collective bargaining union and an employer with no evidence of overreaching on the part of either.

There are two answers to this argument. One is that it is by no means easy to contract one's self out of the provisions of the Fair Labor Standards Act. Brooklyn Savings Bank v. O'Neil, 1945, 324 U.S. 697, 65 S.Ct. 895, 89 L.Ed. 1296. The second answer is that if in fact this is a payment which has become a matter of contract between the parties the performance becomes a matter of right, no matter whether the parties call the arrangement a gratuity, give it a Latin term or invent a new word for it. We are going on what the parties did, not the names given by them to what they did.

We conclude that the provision for attendance bonus was clearly a part of the regular rate of compensation of the employees. In doing so we are not required, because of the contractual element in this case, to go so far as the Second Circuit went in Walling v. Richmond Screw Anchor Co., Inc., 2 Cir., 1946, 154 F.2d 780 or the Fifth Circuit in Bibb Manufacturing Co. v. Walling, 5 Cir., 1948, 164 F.2d 179.

■ (b) The employer makes another argument to the effect that the maxim "de minimus non curat lex" should be applied here. The basis for this argument is that many of the employees have small claims. They run from $21.67 to $256.88. But it will be noted that the period involved to acquire this much of a claim is three years. The amount accruing for each day is, therefore, very small. The employer gets encouragement from certain words about trivial delays in the portal-to-portal case discussions.[5]

We think there is nothing to this point. It has been said that the maxim de minimus does not apply to money demands. Kennedy v. Gramling, 1890, 33 S.C. 367, 11 S.E. 1081, 1088. In any event, the maxim is based on common sense and practicalities.[6] The consideration of plaintiffs' claims does not take the court into the realm of the picayune or hypertechnical.

5. Anderson v. Mt. Clemens Pottery Co., 1946, 328 U.S. 680, 692; Frank v. Wilson & Co., 7 Cir., 1949, 172 F.2d 712, 715, 716, certiorari denied 1949, 337 U.S. 918, 69 S.Ct. 1159, 1160, 93 L.Ed. 1727.

6. See generally Note, 44 ALR 168 (1926). A reading of excerpts from the cases there collected lends considerable support to the statement that, "The maxim is so vague in itself as to form a very uncertain ground of proceeding or judging * * *." Huse v. Merriam, 1823, 2 Me. 375, 376.

■ (c) The successful employees appeal because, inter alia, they were not awarded double the amount of their claim as "liquidated damages." [7] The District Court made a finding on this subject. That finding was to the effect that, "The defendants' failure to pay the overtime in question was in good faith, and the defendants reasonably believed their failure to do so was not in violation of the Fair Labor Standards Act as amended." The employees say there is no basis for this finding of fact.[8] We disagree. We think it not "clearly erroneous" under Fed. Rules Civ.Proc. rule 52, 28 U.S.C.A., and we would make the same finding ourselves on the record in the case.[9] The company acted throughout as if it thought the payment of this attendance bonus was purely gratuitous on its part. Nor did either employees or union indicate any disagreement with the company's position. The payment of such a bonus evidently went back before the period in question here. If we do not know as much about that as we would like to, it is because the court sustained the employees' objection to an offer of evidence relating to the history of this bonus by this employer. The matter was within the trial court's discretion in the first instance. We have no fault to find with the exercise of that discretion. Cf. Michigan Window Cleaning Co. v. Martino, 6 Cir., 1949, 173 F.2d 466.

■ (d) The employees claim interest on the amount found to be due them from the date it became due even if they are not to have liquidated damages. The District Court was right in denying them interest. If the judge had thought it proper in this instance he could have awarded liquidated damages. As shown in the sections of the amended statute already quoted, he had discretion as to what those liquidated damages, if any, should be. But he did not award any. There is, under this statute, no in-between position consisting of unpaid wages plus interest. The claimant gets liquidated damages for delay, as assessed by the judge, or he gets nothing. Brooklyn Savings Bank v. O'Neil, 1945, 324 U.S. 697, 65 S.Ct. 895, 89 L.Ed. 1296.[10]

7. Under the Fair Labor Standards Act liquidated damages followed as a matter of course:

[Sec. 16] "(b) Any employer who violates the provisions of section 6 or section 7 of this Act shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in additional equal amount as liquidated damages." 52 Stat. 1069 (1938), 29 U.S.C.A. § 216 (b).

This, however, was changed by Section 11 of the Portal-to-Portal Act of 1947: "Liquidated Damages.—In any action commenced prior to or on or after the date of the enactment of this Act to recover unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended, if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 16(b) of such Act." 61 Stat. 89 (1947), 29 U. S.C.A. § 260.

8. Plaintiffs argue that good faith based on reasonable grounds means reliance on an administrative ruling. But such reliance is a complete defense to any liability for overtime. 61 Stat. 88 (1947), 29 U.S.C. A. § 258. It follows that something less is sufficient to relieve employer of liability for liquidated damages only.

9. For an indication of the uncertain state of the law on the treatment of bonuses under FLSA see Wage and Hour and Public Contract Division, Release A-13, Feb. 5, 1945, 2 CCH—Labor Law Rep. ¶ 33,074 (3d ed. 1943).

10. It is true that the Court there held only that interest could not be granted in addition to liquidated damages. It said: "Interest is not recoverable in judgments obtained under § 16(b)." 324 U.S. at page 715, 65 S.Ct. at page 906, 89 L. Ed. 1296. But by the discretion vested in the court not to award any liquidated damages at all, as it is under the 1947 amendment above cited, it follows that a decision not to award liquidated damages carries with it a denial of interest, an alternative type of compensation for delay in paying money when due.

(e) The employer complains of the amount awarded to the lawyers for the claimants. This, of course, was a matter initially for the trial court. The lawyers asked for $6,000. The court awarded them $5,000. It should be borne in mind that there are 103 claimants. The complaint was filed in January, 1947, judgment was entered October 11, 1950, and appeal taken to this Court in November of that year. The legal questions are not such as could be answered offhand, and the work involved in handling a case involving five score plaintiffs is not simple even if the legal foundation of their respective cases is the same. We think under the circumstances the allowance was reasonable.

The judgment of the District Court will be affirmed in both appeals.