## Schuster, etc., et al. v. Highland Supply and Manufacturing Company

*Uhl & Uhl*, for plaintiffs.

*Frank A. Orban, Jr.*, for defendant.

LANSBERRY, P. J., March 25, 1952.—This is an action in assumpsit instituted in a State court, based upon the Fair Labor Standards Act enacted by the Congress of the United States in which plaintiffs seek to recover overtime pay, the liquidated damages for failure to pay same and reasonable counsel fee. By stipulation, the parties waived a jury trial and submitted the issue for trial by the court.

In 1945 defendant, Highland Supply and Manufacturing Company, a Pennsylvania corporation, was organized and began the fabricating of steel oil tanks, most of which were shipped into interstate commerce from its plant in Stonycreek Township, Somerset County, Pa. Frank A. Duerr, the principal entrepreneur, was the controlling stockholder and treasurer of the company. During the period beginning March 29, 1948, and continuing through March 29, 1950, approximately 15 men were employed on various dates by the corporation, including the following six plaintiffs: Harry H. Schuster, Ralph E. Montgomery, Clyde B. Lambert, Ray W. Gohn, Harold E. Rexroth and James Gohn; the seventh named plaintiff, Tony F. Gasperine, was not employed during the stated period

and his alleged claim has been abandoned. Three of the six plaintiffs were paid straight time at the rate of $1.30 per hour and the other three straight time at the rate of $1.40 per hour in accordance with their verbal agreement of employment with the company. Although all six plaintiffs worked more than 40 hours during certain weeks of their employment in the period above stated, none of them were paid time and half time rate for overtime work, although the payroll records were set up to show the amount of overtime hours worked. Neither of the plaintiffs, prior to this action, requested payment for overtime work at the overtime rate. Each employe was regularly furnished a pay statement showing the number of hours worked and the total amount of wages earned based on the fixed hourly rate. These plaintiffs made their original complaints to the Department of Labor. Not until a representative of the Wage and Hour Administration of the Department of Labor informed the officials of this corporation did these officials know that the several employes were entitled to overtime pay for overtime labor. The payroll records were not intentionally falsified nor were duplicate sets of payroll records made or kept. Defendant corporation complied with the directions of the Department of Labor as to the submission of its payroll records and, after investigation and direction by the department, the employer tendered each employe a check for the amount of overtime as determined by the Federal Government agency. All of the employes thus tendered overtime pay accepted their checks save six plaintiffs, who refused to accept the check unless it included payment of the overtime pay, together with an equal amount as liquidated damages.

From the foregoing facts it is manifest, and defendant concedes, that it was engaged in interstate com-

merce; consequently, the Fair Labor Standards Act of June 25, 1938, 52 Stat. at L. 1060, 29 U. S. C. §201, as amended, is applicable to defendant corporation.

Section 7 of the act, 29 U. S. C. §207, subtitled "Maximum Hours", provides inter alia:

"(a) No employer shall, except as otherwise provided in this section, employ any of his employees who is engaged in commerce or in the production of goods for commerce —

"(3) for a work week longer than forty hours . . . unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed . . .".

None of the exceptions mentioned in the section are applicable to the instant case; obviously, therefore, defendant was required to pay these plaintiff employes at the overtime rate for all hours exceeding 40 that they worked during any work week.

Section 16 of the act, 29 U. S. C. §216, sets forth the civil and criminal liabilities and penalties for any breach of the act, the pertinent portion of the section being as follows:

"(b) Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Action to recover such liability may be maintained in any court of competent jurisdiction by any one or more employees . . . similarly situated, or such employee or employees may designate an agent or representative to maintain such action for and in behalf of all employees similarly situated. The court in such action shall, in addition to any judgment awarded to

the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action. . . ."

Defendant corporation having failed to comply with the act of Congress requiring the payment of overtime rate for overtime labor, is civilly liable as provided in the act (Divine v. Levy, 45 F. Supp. 49), and these six plaintiffs are proper parties to institute this action: Colan v. Wecksler, 45 F. Supp. 508, Smith v. Continental Oil Co., 59 F. Supp. 91. This court has jurisdiction of both the parties and the subject of the action: Adams v. Long, 65 F. Supp. 310; Mizrahi v. Pandora Frocks, Inc., 86 F. Supp. 958. In construing this section of this act of Congress, decisions of the United States Supreme Court are binding on the State courts and decisions of the lower Federal courts are persuasive and generally followed unless a conflct requires a choice between one or more announced interpretations; Skelly Oil Co. v. Jackson, 194 Okla. 183, 148 P. 2d 182; Hitchcock v. Union & New Haven Trust Co., 134 Conn. 246, 56 A. 2d 655.

An examination of the decisions of the Federal courts construing and applying the penalty section of the act from the time of its passage until the amendatory Act of 1947, familiarly known as the Portal-to-Portal Pay Act, discloses that the liquidated damages provision of the penalty section was mandatory and the courts were obliged to recognize and enforce that penalty (Cassone v. Wm. Edgar John & Associates, 57 N. Y. S. 2d 169 (1945); Wilson Oil Company v. Hardy, 49 N. M. 337, 164 P. 2d 209 (1945)); until the amendment of 1947 the good faith of the employer was immaterial and not a defense (Rigopoulos et al. v. Kervan, 140 F. 2d 506; Overnight Motor Transport Co. v. Missel, 316 U. S. 572; Barrineau v. Carolina Milling Co., 52 F. Supp. 197 (1943)); the legion of cases cited in the several notes to 29 U. S. C. §216

discloses the strictness and uniformity of the mandatory liabilities as applied and enforced by both the courts and the appropriate administrative agencies.

The harshness of various provisions of the Fair Labor Standards Act as interpreted and applied by the courts came to the attention of the Congress in 1947, resulting in the passage of the "Portal-to-Portal Pay" amendment to the Fair Labor Standards Act and other labor acts: 29 U. S. C. §251. The reasons for the adoption of the 1947 amendment, as well as the results desired therefrom, appear in section 1 and may be summarized as follows: Avoiding financial ruin of many employers, impairment of employers' credit, inequalities of competitive conditions in industry, that "(4) employees would receive windfall payments, including liquidated damages of sums for activities performed by them without any expectation of reward beyond that included in their agreed rates of pay," compensation demands for activities not contemplated in the employment, industrial disputes, burdens upon the courts with needless litigation, deprivation of revenue in the public treasury, increased costs to the government for goods and services and, finally, adverse effects upon the various governmental revenues: 29 U. S. C. §251.

Accordingly, the 1947 amendment included three specific sections to alleviate the stringency of the section of the 1938 act here concerned by creating in section 9, 29 U. S. C. §258, a defense to the liquidated damages liability for failure to pay overtime rates for overtime labor if the omission occurred in reliance upon past administrative rulings when such omission was properly pleaded and proven, and, similarly in section 10, 29 U. S. C. §259, if the omission occurs in reliance upon future administrative rulings as qualified and provided in the sections indicated. The third section of the 1947 amendment for relief from the

stringent interpretation and application of the liquidated damages provision of the parent act is section 11, 29 U. S. C. §260, and is as follows:

"In any action commenced prior to or on or after May 14, 1947 to recover unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended, if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216(b) of this title."

The obvious purpose of this section "contemplates relief to employers who erred in determining their wages and hour liabilities": Jackson v. Northwest Airlines, 76 F. Supp. 121, affirmed in 185 F. 2d 74.

That the provisions of this section of the amendment are constitutional is established in various cases; Burke et al. v. Mesta Machine Co., D. C. of Pa., 79 F. Supp. 588; Lassiter et al. v. Atkinson Co. et al., 176 F. 2d 984, and Brown v. Consolidated Corporation, 80 F. Supp. 257; Jackson v. Northwest Airlines, supra, at page 132 for numerous citations.

In considering the remedial good faith provision of the amendatory Act of 1947 it is apparent that a distinction exists between the several sections. In order to establish the defense of good faith under section 9 the employer must plead and prove his reliance upon some disclosed competent agency ruling or action and cannot rely upon his good faith alone, whereas, under section 11 defendant employer must show he acted in good faith and with reasonable grounds for believing that he was not violating the law as to wages paid

and hours worked by his employes: Brown et al. v. Dunbar & Sullivan Dredging Co., 189 F. 2d 871. In construing the more limited section 9 of the act, after reviewing numerous cases the court said in Addison et al. v. Huron Stevedoring Corporation, 96 F. Supp. 142:

"But it is apparent from all of these cases that the *good faith* exercised by the employer must be of such a character that it can meet an objective test:—was his course of conduct innocently followed with an honest intention and was it pursued in the same manner as a reasonably prudent man would have acted under the same circumstances."

This same objective test may be said to apply to the reasonable grounds for believing that he, the employer, was not violating the law when he seeks to establish the defense of good faith under section 11.

While the cases construing section 11 do not define in precise terms the rule to be applied, indicating that each case must be decided on its own facts and circumstances, they do establish that the expressed intent and purpose of Congress in its later enactment shall be applied when there is an absence of bad faith, malice, wilful violation or oppression: Landaas et al. v. Canister Co. et al., 91 F. Supp. 620, affirmed in 188 F. 2d 768; Clougherty v. James Vernor Co., 187 F. 2d 288; Thompson v. F. W. Stock & Sons, Inc., 93 F. Supp. 213; Michigan Window Cleaning Co. v. Martino et al., 173 F. 2d 466, and the many cases cited and annotated in 3 A. L. R. 2d 1185 et seq., particularly section 36, page 1203, and the more recent annotation in 21 A. L. R. 2d 1365 et seq., particularly section 36, page 1380. By the amendment the several courts are now vested with discretion as to the imposition of liquidated damages in proper cases.

In the case at bar it is evident that defendant company violated the provisions of the Fair Labor Stand-

ards Act in omitting to pay overtime wages for the overtime work and that defendant is liable therefor. It is also evident that the violation of the act in this regard was not motivated by bad faith, malice or intended oppression or unfair treatment of its employes, nor was there any purposeful falsification of the records or duplicity in keeping the same.

Defendant is a small employer in which several of the employes were stockholders, including one of the plaintiffs here, who was also a corporate director during the period of this omission to pay overtime. Obviously the management was not as familiar with the Federal wage and hour laws as it should have been but in view of the complexities and conflicting opinions of the law, no reflection upon the management results from this lack of knowledge. The fact is that Mr. Duerr was also engaged in another business operation in Pittsburgh and should have been more familiar with the provisions of the law but he explained that that operation was governed by a union contract in which the wages and hours were regulated by the contract and in conformity with the law, whereas this operation was not operated under a union contract, and the understanding as to wages was directly with the employes, and he therefore believed that it was not within the wage and hour provisions of the law. It is particularly significant that these employes were employed at an hourly rate and that the employes were aware that if orders could be obtained for the oil tanks there would be additional work at that hourly rate, which additional work was to their benefit as well as defendant's. No objections or complaints were advanced by any of the employes, including these plaintiffs, as to the company's failure to pay overtime wages for overtime labor until after plaintiffs ceased their employment for reasons other than the violation of the section of the act under con-

sideration. When the matter of the violation of the act was brought to the attention of the corporate officers, the payroll records were made available to the representative of the wage and hour division of the Department of Labor and compliance with the act was thereafter had; moreover, the suggestions and advice of that agency representative were promptly complied with; tender of the overtime wages was made to all of the employes entitled to the same and accepted by all but these six plaintiffs for reasons of their own.

Having in mind the act of Congress as variously amended, the judicial constructions placed upon those enactments, as well as the purpose and intent of all this legislation, and, having in mind all of the circumstances as found in the case at bar, we have concluded that defendant corporation acted in good faith with reasonable grounds for believing that it was not violating the Wage and Hour Law and that this court must exercise its discretion under section 11 of the 1947 amendment and refuse to impose the liquidated damage liability upon this defendant.

In accordance with the foregoing opinion, we enter the following

## Order

Now, March 25, 1952, it is ordered and directed that a judgment be entered in this court against defendant, Highland Supply and Manufacturing Company, in favor of the several plaintiffs as follows: Harry H. Schuster, $131.61; Ralph E. Montgomery, $34.13; Clyde B. Lambert, $69.89; Ray W. Gohn, $245.45; Harold F. Rexroth, $125.00; James Gohn, $137.98; that this judgment include the sum of $100 attorney's fees payable to counsel for plaintiffs as provided in the act of Congress; that defendant pay the record costs of this proceeding; that if plaintiffs or either of them or their counsel refuse to accept the awards,

upon expiration of the time allowed by law for entry of appeal, defendant is granted leave to pay the judgment, or any part of the judgment tendered but refused, into court for the benefit of plaintiffs and their counsel, whereupon the judgment shall accordingly be satisfied of record by the prothonotary.